Marina Fineman, Esq. (SBN 193065)
**GERACI LAW FIRM**
20 Pacifica, Suite 300
Irvine, CA 92618
Tele.: (949) 379-2600
Fax:   (949) 379-2610
E-mail: m.fineman@geracillp.com

Attorney for Hwa Chong Kang

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 24-18457-BB |
| | Chapter 11 |
| Los Angeles Korean 1st Presbyterian Church Corporation, | |
| Debtor in Possession. | **SECURED CREDITOR HWA CHONG KANG'S SUPPORT FOR U.S. TRUSTEE'S MOTION TO DISMISS THIS CASE, AND RESPONSE TO DEBTOR'S OPPOSITION TO US TRUSTEE'S MOTION TO DISMISS CASE; DECLARATION OF PAUL BAIK IN SUPPORT THEREOF** |
| | Judge: Hon. Sheri Bluebond |
| | Date:   December 5, 2024 |
| | Time:  10:00 a.m. |
| | Place:  255 East Temple Street, Los Angeles, CA 90012 Courtroom 1539 |

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

1

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

1  Secured creditor Hwa Chong Kang ("**Ms. Kang**"), hereby submits her joinder with, and

2  support for, and the United States Trustee's ("**US Trustee**") *Motion For Under 11 U.S.C. §*

3  *1112(b) to Dismiss, Convert, or Direct the Appointment of a Chapter 11 Trustee*) [ECF No. 22]

4  (the "**Motion**")[1] and her response (this "**Joinder/Response**") to the opposition to the Motion

5  [ECF No. 27] (the "**Opposition**") filed by Los Angeles Korean 1st Presbyterian Church

6  Corporation, debtor and debtor in possession (the "**Church**", "**Debtor**", or "**Church Debtor**")

7  in this chapter 11 case (this "**Case**"). The Declaration of Paul Baik, Ms. Kang's representative

8  ("**Baik Declaration**"), annexed hereto, is filed in support hereof.

## I.    BACKGROUND

### A.  Procedural Background.

The Debtor is a Korean 1st Presbyterian Church. John J. Suh ("**Pastor Suh**") is the

Principal/Pastor of the Church Debtor. The Church Debtor owns the property on which the

church is located, at 213 S. Hobart Ave, Los Angeles California 90004 (the "**Church**

**Property**").

This Case is related to the chapter 11 case concurrently filed by 3160 8th LLC (the "**Hotel**

**Debtor**", and with the Church Debtor, collectively referred to herein as the "**Debtors**"), which

is pending before this Court as Case No. 2:24-bk-18458-BB. The Hotel Debtor owns a hotel

located 3160 8th Street, Los Angeles, California (the "**Hotel**", and, with the Church Property,

collectively referred to herein as the "**Properties**"). Pastor Suh's wife, Irene Sue L. Suh, and

their son, David Suh, own the Hotel; David Suh is the managing member of the Hotel Debtor.

Ms. Kang made a loan to the Church Debtor that is secured by both the Church Property

and the Hotel. A trustee sale of the Properties was set for October 17, 2024. Both Debtors filed

their chapter 11 cases on October 17, 2024 (the "**Petition Date**"), immediately after a second

request for a temporary restraining order to stop the trustee sale of the Properties was denied.

///

---

[1] Any capitalized terms not defined herein shall have the meaning set forth in the Motion.

HWA CHONG KANG'S JOINDER TO US TRUSTEE'S MOTION TO DISMISS AND RESPONSE TO
DEBTOR'S OPPOSITION TO US TRUSTEE'S MOTION TO DISMISS CASE; DECLARATION OF PAUL
BAIK IN SUPPORT THEREOF

**B.  Hwa Chong Kang's Loan To The Church Debtor.**

In late 2022, Pastor Suh contacted Ms. Kang, through her representative and marketing manager, Paul Baik, to inquire about obtaining a $4 million loan. The Church needed the loan to refinance an existing loan that was coming due soon after their initial discussions. Ms. Kang was hesitant to loan any money to the Church. She initially declined to provide a loan for reasons, including, without limitation, that (i) the borrower would be a church and not a business entity, and (ii) the value of the Church Property was uncertain; Paul Baik and Ms. Kang suspected that the $11.4 million valuation in the appraisal Pastor Suh presented as evidence of its value was likely significantly overstated. (*See* Baik Decl., ¶ 4.)

Given the upcoming maturity of the existing loan, and Pastor Suh's inability to find a traditional lender, or any other lender, to make the loan, Pastor Suh was determined to convince Ms. Kang to make the loan. To address Ms. Kang's concerns, Pastor Suh told Paul Baik that Ms. Kang would be given a first priority lien on the Church Property. He then also offered additional collateral. He explained that his wife and son own the Hotel through the 3160 8th LLC entity. Because there was already a senior lien on the Hotel, Pastor Suh offered a second position lien on the Hotel to entice Ms. Kang to make the loan, i.e., offering to have the loan cross-collateralized by a first position lien on the Church Property and a second position lien on the Hotel. With the added collateral, Ms. Kang began to discuss the possible terms of a loan. (*See* Baik Decl., ¶ 5.)

However, as discussions proceeded, Ms. Kang learned that there existed a first lien on the Church Property, held by Jae Min Chung, who had made a $150,000 loan to the Church. At that time, Jae Min Chung was in the midst of litigation with the Church and Pastor Suh. Pastor Suh explained that Jae Min Chung's claim would be resolved or satisfied within two weeks' time, and the lien would be released. Ms. Kang eventually agreed to extend the $4 million loan, to be secured by both the Church Property and the Hotel. However, in light of Jae Min Chung's $150,000 lien, she would only agree to the loan if she could escrow $800,000 of the loan proceeds pending the release of Jae Min Chung's lien. Pastor Suh agreed and signed the necessary escrow instructions.

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

HWA CHONG KANG'S JOINDER TO US TRUSTEE'S MOTION TO DISMISS AND RESPONSE TO DEBTOR'S OPPOSITION TO US TRUSTEE'S MOTION TO DISMISS CASE; DECLARATION OF PAUL BAIK IN SUPPORT THEREOF

David Suh and Irene L. Suh (David Suh's mother) signed the loan documents and deed of trust on the Hotel and provided personal guarantees. (*See* Baik Decl., ¶ 6.)

Ms. Kang funded the $4 million loan at the end of 2022; it had a maturity date of January 1, 2024 (the "**Loan**"). In the end, it took approximately seven months for Jae Min Chung's lien to be released, at which time the $800,000 (or balance thereof) was released to the Debtor; some of the $800,000 may have been used to pay off the $150,000 lien. (*See* Baik Decl., ¶ 7.)

In mid-2023, as the Loan maturity date began to approach, Paul Baik began to inquire how the Church Debtor intended to pay off the Loan when it came due. Pastor Suh stated that a Mennonite church foundation would likely provide a refinancing loan, and that he was looking into refinancing options. Despite many months of effort that started in 2023, no lender has offered to extend a refinancing loan. (*See* Baik Decl., ¶ 8.) Pastor Suh was also not able to obtain any other loans secured by the Church Property before getting the Loan, despite his efforts, which is why he offered the Hotel as additional collateral to Ms. Kang.

The Debtor defaulted on the Loan on November 1, 2023 and never came current on the Loan. After the default, Pastor Suh continued to provide different excuses for why the refinancing loan for which he said he has a commitment was not being funded (e.g., the Church needed to fix the elevators before the supposed new lender would lend the money, etc.). Ms. Kang provided additional time to the Debtor to find refinancing. However, she eventually came to the conclusion that she would have to commence foreclosure proceedings. (*See* Baik Decl., ¶ 9.)

On May 7, 2024, the trustee under the deeds of trust recorded, in the official records of Los Angeles, a Notice of Default as document # 20240298584 ("**NOD**"). The NOD provides that "a breach of, and default in, the obligations for which such Deed of Trust is security has occurred". As of May 3, 2024, the reinstatement amount was $4,324,837.50. On September 17, 2024, Trustee recorded in the official records of Los Angeles a Notice of Trustee Sale as document # 20240631390. The sale date (the "**Sale**") was originally set for October 17, 2024, at 10:00 AM. ("**NOS**"). The Sale is currently set for December 10, 2024. (*See* Baik Decl., ¶ 10.)

///

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

4

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

### C. **Lawsuits Filed to Prevent the Foreclosure Sale.**

#### 1. **First Lawsuit:** *Jae Min Chung On Behalf of 100 Church Members. v. Jae Yeun Lee, John S. Suh, Hwa Chong Kang, et al.*

On February 22, 2024, congregant Jae Min Chung filed a lawsuit on behalf of 100 members of the Church Debtor against Jae Yeun Lee, the Church CFO, Pastor Suh, the lenders, and others, to quiet title, for breach of fiduciary duty and for declaratory relief, asserting that Pastor Suh and Jae Yeun Lee never had authority to take the Loan on behalf of the Church Debtor, etc. On August 2, 2024, the plaintiffs filed a motion for a preliminary injunction to stop the October 17, 2024 Sale. By Minute Order dated October 2, 2024, the Honorable Judge Colin Leis "denie[d] the request for preliminary injunction because plaintiff does not offer sufficient evidence to overcome Kang's bona fide encumbrancer defense. Accordingly, plaintiff has not established a likelihood of prevailing sufficient to support a preliminary injunction." [2]

#### 2. **Second Lawsuit:** *3160 8th, LLC, Pastor Suh and David Suh v. Hwa Chong Kang, et al.*

In another effort to stop the Sale, on October 15, 2024, 3160 8th, LLC, Pastor Suh and David Suh filed a new lawsuit, in a different court, and named Ms. Kang, Paul Baik and others as defendants. Plaintiffs admitted in the complaint to having entered into the Loan secured by both Properties and did not dispute the validity of the Loan or the liens on the Properties. Instead, plaintiffs alleged that the defendants misrepresented the nature of the Loan, added lenders without consent, **and failed to provide an accurate accounting. However, plaintiffs provided no concrete evidence to support these allegations**. Plaintiffs filed an *ex parte* application for a temporary restraining order (a "**TRO**") to stop the Sale.

Interestingly, despite their allegations that no accounting had been provided, the plaintiffs acknowledged in the complaint that, on February 14, 2024, defendants, and specifically Ms. Kang,

---

[2] The *Opposition to Plaintiff's Motion for Preliminary Injunction* [Case No. 24STCV04366, Los Angeles County Superior Court filed September 23, 2024], setting forth relevant facts, is attached to the Baik Decl. as **Exhibit 1**. A true and correct copy of the *Minute Order re: Hearing on Motion for Preliminary Injunction* [Case No. 24STCV04366 in Los Angeles County Superior Court issued October 2, 2024] is attached hereto as **Exhibit 2**.

HWA CHONG KANG'S JOINDER TO US TRUSTEE'S MOTION TO DISMISS AND RESPONSE TO DEBTOR'S OPPOSITION TO US TRUSTEE'S MOTION TO DISMISS CASE; DECLARATION OF PAUL BAIK IN SUPPORT THEREOF

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

1  had provided a payoff figure in response to plaintiffs' request for an accounting. This

2  acknowledgment undermined plaintiffs' argument that the defendants failed to comply with

3  statutory obligations, particularly under California Civil Code § 2924. Plaintiffs also failed to

4  provide any factual evidence demonstrating that the payoff amount was inaccurate or materially

5  misleading and never asserted a different loan balance amount.

6  On October 17, 2024, the Honorable Stephen I. Goorvitch, without holding a hearing,

7  issued a Minute Order denying the request for a TRO, finding: (1) plaintiff lacked standing; (2)

8  the *ex parte* application cited no admissible evidence, and plaintiff's counsel does not demonstrate

9  any likelihood of success on the merits; and (3) the application did not establish good cause for

10  exigency (despite that the Sale was set for that same day), and plaintiff did not explain why it

11  waited until the last minute to file the *ex parte* application.[3]

12  In sum, two different trial courts considered the lawsuits and both judges determined that

13  the plaintiffs in the respective lawsuits failed to establish a likelihood of prevailing on the merits

14  in either action. Both courts denied plaintiffs' requests to stop the Sale. Both lawsuits are without

15  merit and were filed solely for the purpose of seeking to avoid the inevitable Sale.

16  Upon receiving the October 17, 2024 Minute Order denying the TRO, the Debtors both

17  immediately filed bare-bones chapter 11 petitions that same day to stop the Sale of their respective

18  Properties. Both Debtors have filed little else since the Petition Date to meet their filing

19  requirements or provide mandatory financial disclosures and have failed to comply with other

20  mandatory steps itemized in the Motion and the Opposition.

21

22

23  ///

24  ///

25

26  _____

27  [3]  The *Opposition to Plaintiff's Temporary Restraining Order* [Case No. 24STCV26918 in Los Angeles County Superior Court filed October 16, 2024], setting forth relevant facts, is attached to the Baik Decl. as **Exhibit 3**. The *Minute Order re: Hearing on Ex Parte Application for Temporary Restraining Order* [Case No. 24STCV26918 in

28  Los Angeles County Superior Court issued October 17, 2024] is attached to the Baik Decl. as **Exhibit 4**.

HWA CHONG KANG'S JOINDER TO US TRUSTEE'S MOTION TO DISMISS AND RESPONSE TO
DEBTOR'S OPPOSITION TO US TRUSTEE'S MOTION TO DISMISS CASE; DECLARATION OF PAUL
BAIK IN SUPPORT THEREOF

## II.    ARGUMENT

### A.    The Debtors' Accusations Against Ms. Kang Are Without Merit.

For the reasons explained above and in Ms. Kang's oppositions filed to the *ex parte* applications for TRO (Ex 1, 3), the accusations of "unorthodox actions of secured creditor Hwa Chong Kang, in refusing to provide an accurate accounting of the amount due, led to the voluntary filing of this Petition" are without merit and are belied by the facts. Both trial court judges determined as much when considering the plaintiffs' requests to stop the Sale. Moreover, Julia Kim, the servicer of the Loan provided monthly statements to the Church Debtor. The Church Debtor also received a payoff statement each time the Church Debtor requested one. Most recently, on November 1, 2024, Ms. Kang sent the Debtor a payoff statement. (Baik Decl., ¶ 15.)

### B.    Dismissal is Warranted on the Basis of the Debtor's Lack of Compliance.

As stated in the US Trustee's Motion, and acknowledged in the Opposition, the Debtor is delinquent in numerous compliance obligations. Moreover, the Debtor appears to be in no hurry to cure these deficiencies, even though it has weeks to at least try and do so. Instead, the Debtor offers only that "t[t]e **omissions enumerated by the Trustee in its Motion have either been cured or will be cured by the date of the Motion or by a reasonable time set thereafter**." The Debtor completely ignores the fact that various "reasonable" deadlines were already set on the Petition Date by the Federal Rules of Bankruptcy Procedure and this Court's Local Bankruptcy Rules. A debtor is not free to ignore such rules for any reason without leave of Court, let alone for absolutely no reason at all and without Court permission, as is the case here.

Instead of seeking additional time from the Court to meet its compliance obligations, the Debtor has simply asserted that it should be excused from complying with the federal and local rules due to "unusual circumstances". Even if that were an excuse for a failure to comply with the various filing, reporting and other obligations, which it is not, the facts presented are very ordinary circumstances for chapter 11 cases; the Debtor, desperate to avoid the Sale, and having failed to obtain relief from the state court, filed this Case on the day of the Sale. Since then, the Debtor has

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

HWA CHONG KANG'S JOINDER TO US TRUSTEE'S MOTION TO DISMISS AND RESPONSE TO
DEBTOR'S OPPOSITION TO US TRUSTEE'S MOTION TO DISMISS CASE; DECLARATION OF PAUL
BAIK IN SUPPORT THEREOF

been taking advantage of the automatic while spending very little time, money or effort to properly participate in this Case and to meet its obligations in exchange for being granted a stay from the Sale of the Church Property.  The Debtor will continue to do so for as long as the Court allows. The Debtor ought not to be permitted to thwart Ms. Kang's efforts to exercise her state law rights, following the Loan default over a year ago, while refusing to, at a minimum, meet its obligations to the Court and the creditors, especially when it has no viable reorganization or exit strategy.

### C.  <u>Dismissal is Warranted on the Basis of the Debtor's Lack of Ability to Reorganize.</u>

At the initial 341(a) meeting of creditors held on November 18, 2024, Pastor Suh testified that he was in discussions with lenders to refinance the Loan. David Suh confirmed the same. Pastor Suh mentioned one potential lender being a Mennonite organization that loans money to churches. It appears that this is the same organization that Pastor Suh has been mentioning to Paul Baik since June 2023. Given that no such loan has been extended for almost 18 months, it is highly unlikely that the Church Debtor will receive a loan from this entity. The Church Debtor has not provided the names of any other possible lenders, and no proof of a financing commitment has been presented. (*See* Baik Decl., ¶ 16.)

Pastor Suh also stated that the Church Debtor collects between $20,000 and $30,000 in donations monthly, from approximately 100 Church members. This seems highly unlikely, and the Church Debtor has not presented any evidence to support this assertion.  Therefore, there does not seem to be any possibility of a reorganization in this case. Instead, the two bankruptcy filings by the Church Debtor and the Hotel Debtor appear to be nothing more than the continued efforts to delay the Sale of the properties, currently set for December 10, 2024. (*See* Baik Decl., ¶ 17.)

Finally, Ms. Kang disputes the assertion that she "(and all creditors) are adequately protected by an appraisal amount of $11,400,000, based on a recent assessment of a licensed appraiser." (Opposition, at p. 5, lines. 3-4.) The Church Property is designated as a California historical property, which places many limitations on an owner's ability to remodel or repurpose the building and thereby limits the pool of possible buyers, and its fair market value if sold. Ms.

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

HWA CHONG KANG'S JOINDER TO US TRUSTEE'S MOTION TO DISMISS AND RESPONSE TO DEBTOR'S OPPOSITION TO US TRUSTEE'S MOTION TO DISMISS CASE; DECLARATION OF PAUL BAIK IN SUPPORT THEREOF

1    Kang believes that the Church Property is likely worth closer to between $5 million and $6 million

2    and may not even be able to be sold for a price that high due to the specific nature of the property

3    and the restrictions on its development and/or rehabilitation. Indeed, this is why Ms. Kang required

4    the Loan to be cross-collateralized by the Church Property and the Hotel. (*See* Baik Decl., ¶ 18.)

5

6    ### III.    CONCLUSION

7            The Debtor has failed to comply with the requirements and obligations of a chapter 11 debtor,

8    which alone mandates dismissal. Moreover, the Debtor filed this Case in bad faith, as a last-ditch

9    effort to stop the Sale of the Church, despite knowing that there is no reasonable prospect of

10   reorganization in this Case; the Debtor has tried for over 18 months, and has failed, to find a lender

11   to refinance the Loan and it does not have sufficient income to make any plan payments.

12           Ms. Kang therefore respectfully requests that the Court grant the US Trustee's Motion and

13   dismiss this Case.

14

15   Date: November 26, 2024                         **GERACI LAW FIRM**

16                                                   By: */s/ Marina Fineman*
                                                     Marina Fineman, Esq.
17                                                   Attorney for Hwa Chong Kang

18

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

## DECLARATION OF PAUL BAIK

I, PAUL BAIK, declare:

1.    I am an individual over the age of 18 years old. The facts set forth herein are known of my own knowledge and, if called on, I could and would competently testify thereto. As to any matters set forth on information or belief, I believe such to be true and correct.

2.    I was the marketing manager Hwa Chong Kang and I assisted her with lending. I have over 25 years' experience in marketing and lending. I file this declaration in support of Ms. Kang's joinder with (the "**Joinder/Response**")[4] and the US Trustee's Motion and her response to the Debtor's opposition to the US Trustee's Motion.

3.    The Church Debtor is a Korean 1st Presbyterian Church that owns the Church Property. Pastor Suh's wife, Irene Sue L. Suh, and their son, David Suh, own the Hotel; David Suh is the managing member of the Hotel Debtor.

4.    In late 2022, Pastor Suh approached me to inquire about obtaining a $4 million loan. He explained the Church needed the loan to refinance an existing loan that was coming due soon after their first discussions. Ms. Kang was hesitant to loan any money to the Church. She initially declined to provide a loan for reasons, including, without limitation, that (i) the borrower would be a church and not a business entity, and (ii) the value of the Church Property was uncertain, and the $11.4 million valuation in the appraisal Pastor Suh presented as evidence of its value was likely overstated.

5.    Given the upcoming maturity of the existing loan, and Pastor Suh's inability to find a traditional lender, or any other lender, to make the loan, Pastor Suh was determined to convince Ms. Kang to make the loan. To address Ms. Kang's concerns, Pastor Suh told me that Ms. Kang would be given a first priority lien on the Church Property, and then offered additional collateral. He also told me that his wife, Irene L. Suh, and their son, David Suh, own the Hotel through 3160 8th LLC. Because there was already a senior lien on the Hotel, Pastor Suh offered a Ms. Kang a

---

[4] Any capitalized terms not defined herein shall have the meaning set forth in the Joinder/Response.

HWA CHONG KANG'S JOINDER TO US TRUSTEE'S MOTION TO DISMISS AND RESPONSE TO
DEBTOR'S OPPOSITION TO US TRUSTEE'S MOTION TO DISMISS CASE; DECLARATION OF PAUL
BAIK IN SUPPORT THEREOF

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

second position liens on the Hotel to entice her to make the loan, i.e., offering to have the loan cross-collateralized by a first position lien on the Church Property and a second position lien on the Hotel. With the added collateral, we began to discuss the possible terms of a loan.

6. However, as discussions proceeded, I learned that there existed a first lien on the Church Property, held by Jae Min Chung, who had made a $150,000 loan to the Church. At that time, Jae Min Chung was in the midst of litigation with the Church and Pastor Suh. Pastor Suh explained that Jae Min Chung's claim would be resolved or satisfied within two weeks' time, and the lien would be released. Ms. Kang eventually agreed to extend the $4 million loan, to be secured by both the Church Property and the Hotel. However, in light of Jae Min Chung's $150,000 lien, she would only agree to the loan if she could escrow $800,000 of the loan proceeds pending the release of Jae Min Chung's lien. Pastor Suh agreed and signed the necessary escrow instructions. David Suh and his wife signed the loan documents and deed of trust on the Hotel and provided personal guarantees.

7. Ms. Kang funded the $4 million Loan at the end of 2022; it had a maturity date of January 1, 2024. In the end, it took approximately seven months for Jae Min Chung's lien to be released, at which time the $800,000 (or balance thereof) was released to the Debtor; some of the $800,000 may have been used to pay off the $150,000 lien.

8. As the Loan maturity date began to approach, I began to inquire how the Church Debtor intended to pay off the Loan when it came due. Pastor Suh told me that a Mennonite church foundation would likely provide a refinancing loan, and that he was looking into refinancing options. Despite many months of efforts starting in 2023, no lender has offered to extend a refinancing loan.

9. The Debtor defaulted on the Loan on November 1, 2023, and never came current on the Loan. After the default, Pastor Suh continued to provide different excuses for why the refinancing loan for which he said he has a commitment was not being funded (e.g., the Church needed to fix the elevators before the supposed new lender would lend the money, etc.). Ms. Kang provided additional time to the Debtor to find refinancing but eventually came to the conclusion

HWA CHONG KANG'S JOINDER TO US TRUSTEE'S MOTION TO DISMISS AND RESPONSE TO
DEBTOR'S OPPOSITION TO US TRUSTEE'S MOTION TO DISMISS CASE; DECLARATION OF PAUL
BAIK IN SUPPORT THEREOF

1    that it would have to commence foreclosure proceedings and instructed the trustee on the deed of

2    trust to do so.

3        10.    I am informed and believe that, on May 7, 2024, the trustee recorded in the official

4    records of Los Angeles a Notice of Default as document # 20240298584 ("**NOD**"). The NOD

5    provides that "a breach of, and default in, the obligations for which such Deed of Trust is security

6    has occurred". As of May 3, 2024, the reinstatement amount was $4,324,837.50. I am further

7    informed and believe that, on September 17, 2024, the trustee recorded in the official records of

8    Los Angeles a Notice of Trustee Sale as document # 20240631390. The sale date was originally

9    set for October 17, 2024, at 10:00 a.m. The Sale is currently sent for December 10, 2024.

10        11.    On February 22, 2024, congregant Jae Min Chung filed a lawsuit on behalf of 100

11    members of the Church Debtor against Jae Yeun Lee, the Church CFO, Pastor Suh, the lenders,

12    and others, to quite title and for breach of fiduciary duty and declaratory relief. On August 2, 2024,

13    the plaintiff(s) also filed a motion for temporary restraining order to stop the foreclosure sales,

14    which the court denied on October 2, 2024. A true and correct copy of Ms. Kang's *Opposition to*

15    *Plaintiff's Motion for Preliminary Injunction* [Case No. 24STCV04366, Los Angeles County

16    Superior Court filed September 23, 2024], is attached hereto as **Exhibit 1**. A true and correct copy

17    of the *Minute Order re: Hearing on Motion for Preliminary Injunction* [Case No. 24STCV04366

18    in Los Angeles County Superior Court issued October 2, 2024] is attached hereto as **Exhibit 2**.

19        12.    On October 15, 2024, 3160 8th, LLC, Pastor Suh and David Suh filed a new

20    lawsuit, in a different court, and named me, Ms. Kang, and others as defendant. Plaintiffs admitted

21    in the complaint to having entered into the Loan secured by both Properties and did not dispute

22    the validity of the Loan or the liens on the Properties. Instead, plaintiffs alleged that the defendants

23    misrepresented the nature of the Loan, added lenders without consent, and failed to provide an

24    accurate accounting. Plaintiffs also filed an *ex parte* application for a TRO to stop the Sale, which

25    this second trial court also denied by minute order dated October 17, 2024. A true and correct copy

26    of Ms. Kang's *Opposition to Plaintiff's Temporary Restraining Order* [Case No. 24STCV26918

27    in Los Angeles County Superior Court filed October 16, 2024], is attached hereto as **Exhibit 3**. A

28

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

HWA CHONG KANG'S JOINDER TO US TRUSTEE'S MOTION TO DISMISS AND RESPONSE TO
DEBTOR'S OPPOSITION TO US TRUSTEE'S MOTION TO DISMISS CASE; DECLARATION OF PAUL
BAIK IN SUPPORT THEREOF

true and correct copy of *the Minute Order re: Hearing on Ex Parte Application for Temporary Restraining Order* [Case No. 24STCV26918 in Los Angeles County Superior Court issued October 17, 2024] is attached hereto as **Exhibit 4**.

13.    In my opinion, based on my knowledge of the facts herein and of the lawsuits, both lawsuits are without merit and were filed solely for the purpose of seeking to delay the inevitable foreclosure Sale, much like this Case.

14.    The accusations of "unorthodox actions of secured creditor Hwa Chong Kang, in refusing to provide an accurate accounting of the amount due, led to the voluntary filing of this Petition" are without merit and are belied by the facts to which the plaintiffs themselves admitted.

15.    Moreover, Julia Kim, the servicer of the Loan provided monthly statements to the Church Debtor.  The Church Debtor also received a payoff statement each time the Church Debtor requested one.

16.    I am informed and understand that, at the 341(a) meeting of creditors, Pastor Suh testified that he was in discussions to obtain refinancing of the Loan with possible lenders, including a Mennonite organization.  Pastor Suh has been mentioning this same organization to me since June 2023. Given that no such loan has been extended for almost 18 months, it is my opinion that it is highly unlikely that the Church Debtor will receive a loan from this entity or any other lender.

17.    I am further informed that Pastor Suh stated under oath at the 341(a) meeting that the Church Debtor collects between $20,000 and $30,000 in donations monthly, from approximately 100 Church members. This seems highly unlikely. The Church's membership is small, comprised of 100 people, some of whom have already sued the Church Debtor in the last few years. In my opinion, based on my knowledge of the Debtor, there does not seem to be any possibility of a reorganization in this case.

18.    I disagree with Debtor's assertion that Ms. Kang "(and all creditors) are adequately protected by an appraisal amount of $11,400,000, based on a recent assessment of a licensed appraiser." (The Church Property is designated as a California historical property, which places

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

HWA CHONG KANG'S JOINDER TO US TRUSTEE'S MOTION TO DISMISS AND RESPONSE TO DEBTOR'S OPPOSITION TO US TRUSTEE'S MOTION TO DISMISS CASE; DECLARATION OF PAUL BAIK IN SUPPORT THEREOF

1  many limitations on an owner's ability to remodel or repurpose the building and thereby limits

2  the pool of possible buyers, and its fair market value if sold. In my opinion, based on information

3  I have received from real estate brokers, I believe that the Church Property is likely worth closer

4  to between $5 million and $6 million and may not even be able to be sold for a price that high

5  due to the specific nature of the property and the restrictions on its development and/or

6  rehabilitation. Indeed, this is why Ms. Kang required the Loan to be cross-collateralized by the

7  Church Property and the Hotel. However, it now appears that there may not be any equity in the

8  Hotel available for Ms. Kang. Therefore, her interests are likely not being adequately protected.

9

10      I declare under the penalty of perjury pursuant to the laws of the State of California and

11  the laws of the United States of America that the foregoing is true and correct.

12

13      Executed this 26th day of November 2024, at Los Angeles, California.

14

15

16  _____
    PAUL BAIK

17

18

19

20

21

22

23

24

25

26

27

28

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

HWA CHONG KANG'S JOINDER TO US TRUSTEE'S MOTION TO DISMISS AND RESPONSE TO
DEBTOR'S OPPOSITION TO US TRUSTEE'S MOTION TO DISMISS CASE; DECLARATION OF PAUL
BAIK IN SUPPORT THEREOF

# EXHIBIT 1

# EXHIBIT 1

Steven E. Ernest, Esq. (SBN 183967)
Anthony P. Diehl Esq. (SBN 342160)
**GERACI LAW FIRM**
90 Discovery
Irvine, CA 92618
Tele.: (949) 379-2600
Fax:   (949) 379-2610
E-mail: s.ernest@geracillp.com
E-mail: a.diehl@geracillp.com

Attorneys for Defendant,
HWA CHONG KANG

**Electronically FILED by
Superior Court of California,
County of Los Angeles
9/23/2024 5:13 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By A. Lopez, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| JAE MIN CHUNG, an individual, ON BEHALF OF 100 MEMBERS OF LOS ANGELES KOREAN 1ST PRESBYTERIAN CHURCH CORPORATION, aka LA KOREAN FIRST PRESBYTERIAN CHURCH, a California Non-Profit Religious Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JAE YEUN LEE, an individual; JOHN S. SUH, an individual; LOS ANGELES KOREAN 1ST PRESBYTERIAN CHURCH CORPORATION, aka LA KOREAN FIRST PRESBYTERIAN CHURCH, a California Non-Profit Religious Corporation; BETHLEHEM CHURCH, a religious organization; HWA CHONG KANG, an individual; HAN JIUN SHIN, an individual, SOLOMON KO and JUNG SOOK KO, individuals, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.  24STCV04366<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>Date: 10/2/2024<br>Time: 8:30 AM<br>Dept.: 74<br><br><br>Complaint Filed: February 22, 2024<br>Trial Date: None Set<br><br>[*Concurrently filed with Defendant's, Hwa Chong Kang, Request for Judicial Notice In Support Of Her Opposition To Plaintiff's Motion For Preliminary Injunction ("RJN")*] |

Petitioner, Jae Min Chung ("Chung"), on behalf of a nonprofit Religious Corporation, Korean First Presbyterian Church ("LA Church"), seeks injunctive relief to enjoin foreclosure of the property commonly known as 213-215, 223 S. Hobart Blvd Los Angeles, CA 90004, ("Subject Property"). Hwa Chong Kang ("Ms. Kang"), defendant, respectfully submits this opposition as

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

follows:

## I.    MEMORANDUM OF POINTS AND AUTHORITIES

## 1. SUMMARY OF ARGUMENT

Chung's request for injunctive relief fails for the following reasons:

- There is no evidence that Chung is likely to prevail on any claim.
- There is no irreparable harm as monetary damages are sufficient.
- If injunction issues, Petitioner must post bond and pay rents.
- Chung's claims are barred by res judicata.
- Under Cal. Corp. Code § 5142, Chung failed to notice an indispensable party.
- Under Cal. Corp. Code § 5142, Chung cannot rescind or enjoin the performance of Ms. Kang.

## II.    DISCUSSION OF LAW

1. Preliminary Injunction

The general purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits of the action. (See *Jamison v. Department of Transportation* (2016) 4 Cal.App.5th 356, 361.) A court evaluates two interrelated factors when deciding whether to issue a preliminary injunction. "The first is the likelihood that the plaintiff will prevail on the merits at trial." (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286.) "The second is the interim harm that the plaintiff is likely to sustain if the injunction [is] denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction [is] issued." (*Cohen*, supra.) Regarding the first factor, the plaintiff must establish a "reasonable probability of success on the merits." (*Jessen v. Keystone Sav. & Loan Ass'n* (1983) 142 Cal.App.3d 454, 459.) "The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors…. (*Butt v. State of California* (1992) 4 Cal.4th 668, 677-678.)

Under California law, "[t]he doctrine of res judicata gives certain conclusive effect to a former judgment in subsequent litigation involving the same controversy." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 [108 Cal. Rptr. 3d 806, 230 P.3d 342].) "Res judicata

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

2                                    BANKRUPTCY EXHIBIT 1

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

1  precludes the relitigating of a cause of action only if (1) the decision in the prior proceeding is

2  final and on the merits; (2) the present action is on the same cause of action as the prior proceeding;

3  and (3) the parties in the present action or parties in privity with them were parties to the prior

4  proceeding." (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82 [70 Cal. Rptr. 3d 817].)

5      2.  Res Judicata

6      When a party fails to raise a claim it could have under the same causes of action, res judicata

7  will bar that claim in any subsequent litigation. This is because res judicata precludes piecemeal

8  litigation by requiring all claims based on the same cause of action to be decided in a single suit. If

9  a claim is not brought initially, it may not be raised at a later date. This principle ensures judicial

10  economy and finality by preventing parties from withholding issues to litigate them in consecutive

11  actions SLPR, L.L.C. v. San Diego Unified Port Dist., 49 Cal. App. 5th 284, Federal Home Loan

12  Bank of San Francisco v. Countrywide Financial Corp., 214 Cal. App. 4th 1520, Allied Fire

13  Protection v. Diede Construction, Inc., 127 Cal. App. 4th 150.

14      Additionally, under California Code of Civil Procedure § 426. 30, if a party against whom a

15  complaint has been filed and served fails to allege in a cross-complaint any related cause of action

16  which they have against the other parties at the time of serving their answer, they may not assert

17  that related cause of action in any other action §  426.30 "Assertion of related causes of action;

18  Preclusion against subsequent assertion in another action." This statutory provision reinforces the

19  res judicata principle by mandating that all related claims be brought in the same action to avoid

20  subsequent litigation on those claims.

21      3.  Derivative Suit

22      With respect to a derivative suit, to remedy a breach of a charitable trust, California

23  Corporation Code § 5142 provides in pertinent part:

25      "(a)(5) The Attorney General shall be given notice of any action
    brought by the persons specified in paragraphs (1) through (4) and
26    may intervene."

28      Further, California Corporation Code § 5142 provides:

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

"**(b)** In an action under this section, the court may not rescind or enjoin the performance of a contract unless:

**(1)** All of the parties to the contract are parties to the action;

**(2)** No party to the contract has, in good faith, and without actual notice of the trust restriction, parted with value under the contract or in reliance upon it; and

**(3)** It is equitable to do so."

## III.    STATEMENT OF FACTS

Chung brings this motion seeking injunctive relief to enjoin a pending foreclosure sale.

1.    Ms. Kang's Beneficial Interest in the Subject Property:

- The foreclosure sale is under a deed of trust recorded on January 10, 2023, as Document # 20230017909 ("LA Church DOT"). (See Declaration of Ms. Kang ("Kang Decl.", ¶2.) (RJN **Ex. 1**.)

- The LA Church DOT secures the repayment of a $4,000,000.00 loan ("LA Church Loan") obtained by Co-Defendant John Suh ("John Suh") as Senior Pastor, Chief Executive Officer, and one of two members of the board of the LA Church. (Kang Decl., ¶3)

- The Subject Property is the principal place of business of the LA Church. (Kang Decl., ¶2)

- The LA Church Loan was originated by Ms. Kang. (See Declaration of Ms. Kang ("Kang Decl.", ¶9.)

- Chicago Title Company ("Trustee") is trustee under the LA Church DOT. Chicago Title Company is not a named respondent in this action.  ("Kang Decl.", ¶5.)  (RJN Ex. 2.)

- Ms. Kang is the current holder of the promissory note[1] evidencing the LA Church Loan and the current beneficiary under the LA Church DOT. (Kang Decl., ¶1.)

---

[1] Ms. Kang is a private individual

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

- John Suh signed and delivered to Ms. Kang a Corporate Resolution resolving that CEO John Suh is authorized and empowered to mortgage the LA Church. (Kang Decl., ¶8.)

- Western Fidelity Trustees is the acting agent for the Trustee. Western Fidelity Trustees is not a named respondent in this action. (Kang Decl., ¶5.)

- Julia Kim is the Servicer of the LA Church Loan. Julia Kim is not a named respondent in this action.  (Kang Decl., ¶5.)

- The LA Church Loan became delinquent in payment as of November 1, 2023. (Kang Decl., ¶6.)

- The LA Church Loan matured on January 1, 2024. The LA Church Loan remains unpaid and is currently in default. (Kang Decl., ¶6.)

- On May 7, 2024, Trustee recorded in the official records of Los Angeles a Notice of Default as document # 20240298584 ("NOD").  The NOD provides that "a breach of, and default in, the obligations for which such Deed of Trust is security has occurred".  As of May 3, 2024, the reinstatement amount was $4,324,837.50. (Kang Decl., ¶6.)  (RJN Ex. 2.)

- On September 17, 2024, Trustee recorded in the official records of Los Angeles a Notice of Trustee Sale as document # 20240631390. The Sale date is October 17, 2024, at 10:00 AM. ("NOS"). (Kang Decl., ¶13.)  (RJN Ex. 3.)

2. <u>Final Judgment in Prior Litigation - Case No. 21STCV31304</u>

Prior to initiating the immediate action, Howard Sungi Kim ("Kim") filed an earlier lawsuit naming John Suh and Chung as defendants in Case No. 21STCV31304.

The case proceeded to a bench trial on June 5, 2023. The Court found the facts below by a preponderance of the evidence ("Final Statement of Decision") (RJN Ex. 4.) (Attached as Exhibit "B"), in relevant part:

- Kim filed the operative First Amended Complaint in the prior case on July 25, 2022; (Final Statement of Decision pg. 1)

- That plaintiff Kim alleged that John Suh intended to use the Church's insurance

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

policy as a guarantee in lieu of a deed of trust secured by LA Church's real property, to obtain loans (Final Statement of Decision pg. 3);

- In late 2022 or early 2023, John Suh obtained a loan from individual Ms. Kang and made her a mortgagee, payee, and/or beneficiary of the Church's insurance policy with Brotherhood Mutual Insurance Company (Final Statement of Decision pg. 6);

- The money John Suh's borrowed from Ms. Kang went to Bethlehem Church (another church operated by John Suh) and/or to Suh's son David Suh (Final Statement of Decision pg. 6).

- The evidence established no legitimate reason for Ms. Kang to be a payee, mortgagee, or beneficiary of LA Church's insurance policy (Final Statement of Decision pg. 6).

- Nevertheless, Kim failed to show that the appointment of Suh as Senior Pastor is void (Final Statement of Decision pg. 6); and

- Kim failed to prove that John Suh took actions that justify his removal as an officer of the LA Church (Final Statement of Decision pg. 7).

3. Facts from Chung's First Amended Complaint

- Chung filed his First Amended Complaint ("FAC") with the court on April 23, 2024. (RJN Ex. 5.)

- To date, Chung has failed to properly name all parties in interest, including the foreclosure trustee Western Fidelity Trustees, the servicer Julia Kim, and the Attorney General - as required by California Corporation Code § 5142(a)(5);

- "If the plaintiff had known about the above-listed instruments prior to or during the trial of the Prior Action, the plaintiff would have requested Judge Leitner order the above liens securing it removed from the property of Defendant LA CHURCH" (FAC pg. 5 lines 6-8);

- "As a proximate result of Defendants LEE and SUH's breach of the fiduciary duty they owed to Defendant LA CHURCH, Defendant LA CHURCH sustained damages well in excess of $35,000." (FAC pg. 8 line 16 – 18)

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1

2  **IV.    ARGUMENT**

3  **1.  <u>Chung Bears the Burden to Show a Likelihood of Prevailing on the Merits.</u>**

4      The Supreme Court deem a preliminary injunction as "an extraordinary remedy never

5  awarded as of right." (See *Winter v. NRDC*, 555 U.S. 7, 24 (2008); *Munaf v. Geren*, 553 U.S. 674,

6  689-90 (2008)). A plaintiff seeking a preliminary injunction bears the burden of presenting facts

7  which show a reasonable probability that he will succeed on the merits. (See *Fleishman v. Super.*

8  *Ct.*, 102 Cal. App. 4th 350, 356).

9      A.  **<u>Petitioner is Unlikely to Succeed at Quieting Title on the Merits</u>**

10      To justify a preliminary injunction Petitioner must show a likelihood of success on the

11  merits. (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286).

12      Petitioner's claim to quiet title is unlikely to succeed on account of several critical

13  deficiencies. To prevail in an action to quiet title, a plaintiff must prove title superior to that of

14  defendant. *(Gerhard v. Stephens* (1968) 68 Cal.2d 864 (69 Cal.Rptr. 612, 442 P.2d 692)). Chung

15  failed to sufficiently plead facts that he or the "members" of the LA Church, if any exist beyond

16  John Suh and Lee, have any legal or equitable interest in the LA Church or the subject property.

17      To demonstrate superior title against a lender's deed of trust, the borrower must allege that

18  they have, or are willing to tender, the full amount due under the loan. (*Cano v. Nbs Default Servs.*,

19  2017 Cal. Super. LEXIS 89565, *Stonewood Luxury Homes v. Syndicate* 2017, 2020 Cal. Super.

20  LEXIS 14721, *Evaldez v. Shellpoint Mortg. Servicing*, 2023 Cal. Super. LEXIS 21563) Here, Chung

21  makes no such offer, instead he seeks to void Ms. Kang's deed.

22      Furthermore, the petitioner must establish title to the property in dispute, relying on the

23  strength of their own title rather than the weakness of the defendant's title. (*Cerda v. Catamount*

24  *Props*. 2018, 2020 Cal. Super. LEXIS 10059) Chung et al lack both legal and equitable interest in

25  the subject property.

26      Chung asserts that John Suh transferred the property in violation of a court order. Whether

27  or not this allegation is factual, it does not affect Ms. Kang's rightful foreclosure of the subject

28  property, whether title of the subject property is held by Bethlehem or the LA Church.

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

1   The complaint seeks to quiet title as to the sale date November 23, 25 ,2023. Ms. Kang

2   recorded the LA Church DOT ten months earlier in January of 2023, and seven months prior to any

3   court order enjoining John Suh from transferring interest in the subject property, which was entered

4   August of 2023.   Thus, the LA Church DOT is beyond the scope of Petitioner's cause of action to

5   quiet title.

6   Even if title of the subject property is reversed and returned to the LA Church, the foreclosure

7   is nevertheless inevitable.

8   In sum, Chung shows no intent to tender any payment. And Petitioner relies on weak claims

9   of title, if any, to the LA Church or subject property. Thus, based on the merits, Plaintiff cannot

10  show a likelihood of successfully quieting title.

11  **B. Petitioner is Unlikely to Succeed at Voiding Ms. Kang's Deed**

12  To justify a preliminary injunction Petitioner must show a likelihood of success on the

13  merits. (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286).

14  Both Chung's complaint and Preliminary Injunction Motion each fail to allege or assert that

15  John Suh lacked actual or apparent authority to enter into, negotiate, execute and deliver any and all

16  documents without limitation to any escrow instructions, deed, deed of trust, note or other

17  instruments, and do all other things and make all decisions which, in his judgment, are in the best

18  interest of the LA Church all in the name of and behalf of the LA Church.

19  The complaint admits that "Plaintiff CHUNG has not made an effort to secure from the board

20  of directors (also known as the "Session") of Defendant LA CHURCH any actions to have the [sic]

21  SUH CREDITORS' liens released against the property of LA CHURCH or to reverse the sale of

22  the property and assets of Defendant LA CHURCH to Defendant BETHLEHEM because

23  Defendants LEE and SUH constitute the sole members of the board, and any such effort would be

24  futile." (FAC pg. 6 lines 16-21). This concession highlights John Suh's authority to mortgage the

25  LA Church and the subject property.

26  Thus, Chung does not dispute that John Suh had authority to mortgage the subject property.

27  Furthermore, Suh signed and delivered to Ms. Kang a Corporate Resolution resolving the

28  CEO John Suh is authorized and empowered to mortgage the LA Church. (Kang Decl., ¶8.)  **Ms.**

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1    **Kang may rely on the written statements of the borrower** (California Financial Code § 22502).

2    Ms. Kang neither knew nor had reasonable grounds to believe that John Suh exceeded his authority

3    to mortgage the subject property. (*Roth v. Schaaf* (1957) 148 Cal.App.2d 662, 666 [307 P.2d 421].)

4        Because John Suh had proper authority to mortgage LA Church, the LA Church DOT is

5    valid and enforceable.

6        So, Chung's cause of action to void the LA Church DOT for Breach of Fiduciary Duty

7    Against Defendant John Suh is undermined by John Suh's uncontested authority to mortgage the

8    LA Church and that any misappropriation of loan proceeds subsequent to the execution of the LA

9    Church Loan cannot void the underlying deed of trust.

10        If arguendo, even if John Suh breached his fiduciary duty to LA Church, **Ms. Kang had no**

11    **obligation to ascertain that the proceeds of the loan are used in accordance with stated**

12    **intended purpose** pursuant to California Financial Code § 22502. Ms. Kang has an arm's length

13    relationship with the borrower without such fiduciary duty. (*Oaks Management Corporation v.*

14    *Superior Court* (2006) 145 Cal.App.4th 453, 466 [51 Cal. Rptr. 3d 561].)

15        Despite any purported breach of fiduciary duty of John Suh, **the validity of the LA Church**

16    **DOT is wholly enforceable because Ms. Kang is a bona fide encumbrancer**. The elements of a

17    bona fide encumbrancer in California are similar to those of a bona fide purchaser. A bona fide

18    encumbrancer is one who takes in good faith, without notice of any alleged other interest in the

19    property that is not of record, and for a valuable consideration, acquires a title or lien by an

20    instrument that is first duly recorded. (See Civ. Code § 1107; *Wutzke v. Bill Reid Painting Services,*

21    *Inc.* (1984) Cal. App. 3d 35, 42 [citing *Firato v. Tuttle* (1957) 48 Cal. 2d 136].) "The protection

22    provided by [former] Civil Code § 2243 is based on the equitable principle that innocent

23    encumbrancers and purchasers have a right to rely on the record title of the grantor. (Id. at 42-43

24    [emphasis added].) Until a voidable deed, which is of record, is declared void, it is fully operative

25    and may be relied on by a bona fide purchaser who pays valuable consideration and who has no

26    notice of fraud, undue influence, or duress. (See *Fallon v. Triangle Mgmt. Services, Inc.* (1985) 169

27    Cal. App. 3d 1103, 1106; see also, *Schiavon v. Arnaudo Brothers* (2000) 84 Cal. App. 4th 374, 378.)

28    The same rule applies to bona fide encumbrancers. (*Fallon*, supra, 169 Cal. App. 3d at 1106.)

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

Petitioner failed to raise, let alone plead, sufficient facts to negate Ms. Kang's bona fide status.

A bona fide lender in California has several rights and protections under the law. A bona fide lender is protected against the *equitable* remedies of the original defrauded owner - here Chung's alleged superior title - if the property was conveyed to the lender without knowledge of any fraud (*Setchell v. Prochaska*, 8 Cal. App. 2d 541). Ms. Kang holds a valid, recorded deed of trust securing a $4 million loan, lawfully executed by John Suh. Chung failed to plead with specificity facts to meet the elements of fraud or forgery. The facts and law support a clear conclusion: Ms. Kang's bona fide status is beyond this Petitioner's reach for an equitable remedy.

Accordingly, any breach of fiduciary duty of John Suh is insufficient to render Ms. Kang's deed void or strip the equitable rights and protections of her bona fide status. Rather, Petitioner's remedies are legal and available from the breaching party, John Suh, as discussed below.

Given these factors, Chung failed to meet his burden to establish a likelihood of success on the quiet title claim or void Ms. Kang's deed, undermining the fundamental basis for preliminary injunction. Thus, based on the merits, Chung cannot show a likelihood of successfully voiding Ms. Kang's deed.

## 2. There Is No Risk of Irreparable Harm As the Potential Damages Are Solely Monetary.

"Injunction is an extraordinary remedy…courts have consistently proceeded with great caution in exercising their power and have required a clear showing that the threatened and impending injury is great and can be averted only by injunction" (*Wilkins v. Oken*, 157 Cal. App. 2d 603, 606, 321 P.2d 876 (Cal. Ct. App. 1958)). Mere monetary loss does not constitute irreparable harm in the context of proposed injunctive relief unless there is some showing that the one against whom injunctive relief is sought is insolvent or otherwise unable to respond in damages. (*West Coast Constr. Co. v. Oceano Sanitary Dist.* (1971) 17 Cal. App. 3d 693, 700). Even when real property is at issue, courts have still found that monetary damages can be

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2600

1  sufficient.[2] [See *Jessen v. Keystone Sav. & Loan* Ass'n (1983) 142 CA3d 454, 458—refusing

2  preliminary injunction to restrain foreclosure sale]. The *Jessen* Court explicitly rejected the

3  argument that an injunction was required "simply because it is real property upon which

4  foreclosure is sought, and the uniqueness of real property prevents its taking ever being adequately

5  compensated by money." (See *Id.*)

6      "In *Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.* (1967) 255 Cal.App.2d 300,

7  63 Cal.Rptr. 148, the court reversed a preliminary injunction, in part because an adequate remedy

8  at law—monetary damages—could be recovered in an action for breach of contract. (*Id.* at p. 306,

9  63 Cal.Rptr. 148, citing *Morrison*, supra, 169 Cal. at p. 586, 147 P. 259.) In *Friedman v. Friedman*

10  (1993) 20 Cal.App.4th 876, 24 Cal.Rptr.2d 892, the court reached the same conclusion. (*Id.* at p.

11  889, 24 Cal.Rptr.2d 892, citing *Morrison*, supra, 169 Cal. at pp. 586, 589–590, 147 P. 259.) And

12  in the words of one court, "the question [in Morrison] was whether the plaintiff had to show

13  inadequacy of the legal remedy in order to obtain specific performance. The answer was yes."

14  (*Walton v. Walton* (1995) 31 Cal.App.4th 277, 292, 36 Cal.Rptr.2d 901)"(See *Wilkison v.

15  Wiederkehr*, 101 Cal. App. 4th 822, 832 (2002)).

16      Under California Probate Code § 9601, if a personal representative (who can be considered

17  a principal in certain fiduciary relationships) breaches their fiduciary duty, they are chargeable with

18  any loss or depreciation in value of the estate, any profit made through the breach, or any profit that

19  would have accrued to the estate if not for the breach. Chung's claims of John Suh's breach of

20  fiduciary duty, misuse of Church property, or financial mismanagement are pecuniary in nature, are

21  subsequent to the execution of the deed, and do not negate Ms. Kang's bona fide status.

22      Discussed supra, Chung lacks both legal and equitable title to the Subject Property.

23  Consequently, while the Subject Property is unique real property, the harms, if any, to Chung caused

24  by foreclosure are easily remedied by fungible pecuniary means.

25  _____

26  [2] In *Jessen*, the real property consisted of condominium units being held for investment

27  purposes. Because they had an established market price, damages were an adequate

28  remedy warranting denial of injunctive relief.

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Chung failed to show that monetary damages are inadequate, and in fact, Chung pleaded that the monetary remedy sought against John Suh is $35,000. (FAC pg 8 line 16 – 18)

Because Chung cannot show any likelihood of success on the merits to quiet title or void Ms. Kang's deed, the foreclosure is inevitable and delaying it is unjustified.

**3.** **The Harm to Ms. Kang is Greater than the Harm to Chung**

To justify a preliminary injunction Petitioner must show the balance of interim harm favors the Petitioner over the defendant. (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286).

As Discussed above, Chung lacks any ownership interest in the subject property. Consequently, Chung's harm is minimal and can be addressed through monetary compensation if he prevails.

Conversely, Ms. Kang will suffer substantial harm if an injunction is permitted. Given the large loan amount of $4,000,000 and property value involved, the financial implications for Ms. Kang are significant. Ms. Kang is not an institutional lender; she is merely an individual. The source of funds to fund the loans was Ms. Kang's personal life savings drafted from her personal bank account. (Kang Decl., ¶10.)

Permitting the injunction would unjustly delay Ms. Kang's ability to recover the loaned funds, increasing her financial risk. Continued delays harm her financial interests and jeopardize the value of her secured property.  The risks and harms are numerous;

- Inability to meet obligations: The delay in foreclosure affects a lender's ability to manage its portfolio and meet its financial obligations.
- Delay in debt recovery: The injunction prevents timely foreclosure and sale, delaying repayment and diminishing a lender's financial position.
- Increased carrying costs: The lender will continue to bear the burden of property taxes, insurance, and maintenance during the injunction period.
- Diminished property value: Property values may decline during the delay, leading to potential losses if the final sale occurs at a lower market value.
- Increased interest and unpaid balance: During the injunction, the borrower may

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

continue to accrue interest or default further, exacerbating the lender's losses.

- Risk of borrower insolvency: Prolonging the foreclosure could allow the borrower to file for bankruptcy, reducing or eliminating the lender's ability to recover the full amount owed.

- Market fluctuations: Ms. Kang bears the risk of adverse market shifts during the delay, potentially leading to a reduced sale price or difficulty in finding buyers later.

### 4. **If the Injunction is Granted, Chung Must Post a Bond.**

An injunction would prevent Ms. Kang from obtaining possession of the Property during the pendency of the lawsuit while she also goes unpaid on the loan.

Under *California Code of Civil Procedure* § 529(a):

"On granting an injunction, the court or judge *must require an undertaking* on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction."

Case law allows the court to require the amount of the undertaking to reflect the "reasonably foreseeable" damages of the restrained party caused by a wrongfully issued injunction. Reasonably foreseeable damages include lost profits, rents, and attorney's fees incurred in an appeal of the preliminary injunction or in defending against those causes of action upon which the preliminary injunctive relief had been granted. In the event the Court permits the preliminary injunction, Ms. Kang requests that the Court order Chung to post a bond in an amount no less than $4.5 million.

### 5. **Chung's claims are barred by res judicata.**

When a party fails to raise a claim it could have under the same causes of action, res judicata will bar that claim in any subsequent litigation. This is because res judicata precludes piecemeal litigation by requiring all claims based on the same cause of action to be decided in a single suit. If a claim is not brought initially, it may not be raised at a later date. This principle ensures judicial economy and finality by preventing parties from withholding issues to litigate them in consecutive actions SLPR, L.L.C. v. San Diego Unified Port Dist., 49 Cal. App. 5th 284, Federal Home Loan

Bank of San Francisco v. Countrywide Financial Corp., 214 Cal. App. 4th 1520, Allied Fire Protection v. Diede Construction, Inc., 127 Cal. App. 4th 150.

Additionally, under California Code of Civil Procedure § 426. 30, if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which they have against the plaintiff at the time of serving their answer, they may not assert that related cause of action in any other action § 426.30. Assertion of related causes of action; Preclusion against subsequent assertion in another action. This statutory provision reinforces the res judicata principle by mandating that all related claims be brought in the same action to avoid subsequent litigation on those claims.

Prior to initiating the immediate action, Howard Sungi Kim ("Kim") filed an earlier lawsuit naming John Suh and Chung as defendants, which involved the subject property. Case No. 21STCV31304. Kim filed the operative First Amended Complaint in the prior case on July 25, 2022. (RJN Ex. 4.)

The case proceeded to a bench trial on June 5, 2023. The Court found the facts below by a preponderance of the evidence in relevant part:

- That plaintiff Kim alleged that John Suh intended to use the LA Church's insurance policy as a guarantee in lieu of a deed of trust secured by the subject property, to obtain loans;

- In late 2022 or early 2023, John Suh borrowed money from individual Ms. Kang and made her a mortgagee, payee, and/or beneficiary of the LA Church's insurance policy with Brotherhood Mutual Insurance Company;

- John Suh used the proceeds of the loan for Bethlehem Church and/or to Suh's son David Suh.

- The evidence establishes no legitimate reason for Ms. Kang to be a payee, mortgagee, or beneficiary of LA Church's insurance policy.

- Kim failed to prove that the appointment of John Suh as Senior Pastor is void;

- Kim failed to show that John Suh took actions that justify his removal as an officer of LA Church.

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1    The analysis here is straightforward.

2    The LA Church DOT was recorded on January 10, 2023, which was prior to the prior court's

3    final judgment.  And, the prior court found that Ms. Kang had a loan in connection with the subject

4    property. Therefore, Chung had constructive knowledge of the LA Church DOT while the prior case

5    was pending and he could have raised the validity of the LA Church DOT in the prior case.

6    Despite that the LA Church Loan was to "Bethlehem and/or Suh's Son", the prior court

7    found John Suh's action did not justify voiding John Suh's position as Senior Pastor and that such

8    action did not justify John Suh's removal as an officer of the LA Church. This goes to reason to

9    support that that John Suh's action of taking a loan from Ms. Kang was not a breach of his fiduciary

10   duty to the LA Church and that he had authority to do so.

11   Chung states in his First Amended Complaint that:

12   "If the plaintiff had known about the above-listed instruments prior to or during the trial of

13   the Prior Action, the plaintiff would have requested Judge Leitner order the above liens securing it

14   removed from the property of Defendant LA CHURCH." (FAC pg. 5 lines 6-8)

15   That admission by Chung squarely justifies barring him from raising that same claim in this

16   case.

17

18   **6.  <u>Under Cal. Corp. Code § 5142, Chung failed to notice all parties to the derivative suit.</u>**

19   Corporation Code § 5142 provides in pertinent part:

20

21   "(a)(5) The Attorney General shall be given notice of any action
     brought by the persons specified in paragraphs (1) through (4), and

22   may intervene."

23

24   Further, California Corporation Code § 5142 provides:

25

26   "(b) In an action under this section, the court may not rescind or
     enjoin the performance of a contract unless:

27   (1) All of the parties to the contract are parties to the action;

28

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

Here, the attorney general is an essential party to this derivative action. Other parties to the contract include the Trustee and the Servicer. None of these parties are parties named in the suit. The statute is clear, because Chung failed to name these parties in the derivative suit, the court may not rescind or enjoin Ms. Kang's contractual performance to foreclose on the subject property.

**7. Under Cal. Corp. Code § 5142, Chung cannot rescind or enjoin the performance of Ms. Kang.**

Cal. Corp. Code § 5142 provides: (b) In an action under this section, the court may not rescind or enjoin the performance of a contract unless: (2) No party to the contract has, in good faith, and without actual notice of the trust restriction, parted with value under the contract or in reliance upon it; and (3) It is equitable to do so.

A derivative suit to enjoin breach of a charitable trust must comport with Cal. Corp. Code § 5142. Most importantly sections (b)(2) and (b)(3) prohibit the manner of relief sought by Chung. Ms. Kang is a party to the LA Church DOT that Chung seeks to void and enjoin. Ms. Kang, in good faith, parted with value of $4,000,000 in reliance on John Suh's authority to enter the contract, and Ms. Kang had no notice that any factors existed that would render the deed voidable. (Kang Decl., ¶11.)

Discussed supra, Ms. Kang is a bona fide encumbrancer, and it is inequitable to enjoin Ms. Kang from her state law remedies as beneficiary of the LA Church DOT. Ms. Kang was diligent in offering the LA Church Loan and would not have entered into any such contract if she were aware of any impropriety on the part of John Suh. (Kang Decl., ¶12.) Accordingly, pursuant to § 5142 the court may not rescind or enjoin the performance of the note secured by the LA Church DOT.

**V.    CONCLUSION**

The plaintiff's request for relief is inequitable and denial of the injunction is a sound exercise of this court's discretion. Chung cannot establish any likelihood of success on the merits to void the deed quiet title, which are barred by res judicata. Further, Chung cannot demonstrate irreparable harm, as any damages he may seek are purely monetary, are the burden of John Suh, and thus

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

1   insufficient to justify injunctive relief. The law does not favor granting extraordinary remedies

2   where an adequate legal remedy exists. Additionally, Ms. Kang's interests as a bona fide

3   encumbrancer, having parted with $4,000,000 in good faith, stand unchallenged. Allowing an

4   injunction would cause her significant harm, while Chung has failed to show any meaningful interim

5   harm. Chung's inability to meet procedural and substantive requirements under Cal. Corp. Code §

6   5142 further undermines his request for equitable relief. Accordingly, the court must find in favor

7   of Ms. Kang and deny the requested injunction in full. Finally, if the court enjoins the foreclosure,

8   then Ms. Kang should be entitled to collect rents as partial payment for the amounts owed and bond

9   must be posted to account for further damages.

10

11         Respectfully Submitted,

12

13   Date:   September 23, 2024                **GERACI LAW FIRM**

14

15                                             By: _____

16                                                 Anthony P. Diehl, Esq.
                                                   Attorney for Defendant,
17                                                 HWA CHONG KANG

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Exhibit "B"
Final Statement of Decision

**FILED**
Superior Court of California
County of Los Angeles

AUG 07 2023

David W. Slayton, Executive Officer/Clerk of Court
By: M. Ventura, Deputy

**Superior Court of California**

**County of Los Angeles**

| | | |
|---|---|---|
| Los Angeles Korean 1st Presbyterian Church Corporation, et al., | | Case No.: **21STCV31304** |
| | Plaintiffs, | |
| v. | | Final Statement of Decision |
| Jae Yeun Lee, et al., | | |
| | Defendants. | |

Plaintiff Howard Sungi Kim and Los Angeles Korean 1st Presbyterian Church Corporation ("Church") filed the operative First Amended Complaint on July 25, 2022 against Defendants Jae Yeun Lee, Dae Kun Lee, He Keuk Lee, Sun Hwan Kim, and John S. Suh. The FAC contains causes of action for breach of fiduciary duty, conversion, declaratory relief, preliminary and permanent injunction, and battery. By stipulation on January 4, 2023, Plaintiffs clarified that Kim sues derivatively on behalf of the Church.

The case is consolidated with Case No. 21STCV32559, filed on September 1, 2021, in which Jae Yeun Lee and other individuals, also purporting to act on behalf of the Church, sued Howard Kim and others for declaratory and injunctive relief, breach of fiduciary duty, and accounting.[1]

The case proceeded to a bench trial on June 5, 2023 on the first four causes of action in the FAC, and on the cause of action in the Cross Complaint for breach of fiduciary duty against Howard Kim and Jae Min Chung. (Plaintiffs dismissed from the FAC He Keuk Lee and Sun Hwan Kim as Defendants and the cause of action for battery. Cross Complainants dismissed Seok Hee Ha, Seung Jin Lee, and Seung Hye Kim as Cross Defendants and the cause of action for accounting, and advised the Court that their causes of action for declaratory and injunctive relief had been decided in earlier proceedings.) At the close of evidence on June 7, 2023, the Court ordered the

---

[1] The parties routinely have referred to the -32559 case as the "Cross Complaint." For clarity, the Court adopts that designation here.

parties to provide simultaneous closing argument briefs. The parties did so on July 5, 2023, after which the Court took the matter under submission.

Defendants timely requested a statement of decision. The Court issued its proposed statement of decision on July 14, 2023; it set forth the Court's determination as to the ultimate facts and material issues in dispute. *Antelope Valley Groundwater Cases* (2020) 59 Cal. App. 5th 241, 265-66. Neither side submitted objections under CRC 3.1590(g). The Court now issues its final statement of decision.

The Court finds the facts below by a preponderance of the evidence. The Court considered which party had the burden of proof on the various claims, defenses, and cross claims. The Court evaluated Plaintiff's request for punitive damages under the clear and convincing evidence standard in Civil Code § 3294(a).

## PRIOR PROCEEDINGS BEFORE JUDGE CHALFANT

The FAC and Cross Complaint concern two factions vying for control of the Church: the Plaintiff group (the "Kim faction"), and the Defendant/Cross Complainant group (the "Lee faction").

In December 2021, Judge James Chalfant in Department 85 was presented with a motion to invalidate the election of Howard Kim as Senior Pastor. The Court recognized the constitutional limitations on the Court's review of matters that concern religious doctrine. For example, as Judge Chalfant noted, the Court cannot constitutionally decide who should be the religious leader of the Church, or who should be its clergy and members. (*See, e.g., Serbian Eastern Orthodox Diocese v Millivojevich* (1976) 426 U.S. 696, 724-725.) The Court may, however, apply neutral principles of law to determine, for instance, whether the Church complied with its governing bylaws. The Court ruled that Howard Kim, leader of the Kim faction, had not been properly installed as Senior Pastor of the Church and the Kim faction's removal of the Lee faction was improper and void. Although the Court did not directly rule on Jae Yeun Lee's excommunication, it noted that the excommunication violated the bylaws.

The Court ordered new elections for the Church's Board (known as the Session). The Court subsequently appointed a Receiver to oversee the election and take temporary control of the Church's finances. The election was held on August 21, 2022; no candidate for the Session received the necessary two-thirds vote.

The Court previously had ruled that Lee, namesake of the Lee faction, did not need to run in the August 2022 election because he already had been elected, his term had not expired, and he was properly a member of the Session. On September 8, 2022, the Court ruled that one active member (Lee) was sufficient to constitute a Session under the Church's bylaws; the Court terminated the Receiver's appointment.

## EVIDENCE AND ANALYSIS

At trial, Plaintiffs' witnesses recounted their version of how Kim became Senior Pastor, subject to congregational approval, but Lee refused to allow the congregation to vote. Plaintiffs' witnesses also testified that the Kim faction voted to excommunicate Lee, leaving Kim and Elder Shin as members of the Session. When Shin resigned from the Session, according to Plaintiffs, Kim became, in Plaintiffs' view, the sole member of the Session.

After his purported excommunication, Lee began to attend services at Bethlehem Church, where Suh was Senior Pastor. Plaintiffs contend that Lee brought Suh into the Church for improper purposes. Plaintiffs argue that Suh planned to use the Church's real property as security for his personal loan debts. Plaintiffs presented evidence of Suh's alleged use of Bethlehem Church's assets for his personal use, including loans made for the benefit of Suh's son's business. According to Plaintiffs, Suh then caused his various creditors to be named as mortgagees, payees, or beneficiaries of the Church's insurance policy. Plaintiffs argue that "the only inference that can be drawn" is that Suh intended to use the Church's insurance policy as a guarantee in lieu of a deed of trust secured by the Church's real property, to obtain loans. Plaintiffs say that all of Lee's actions were for the benefit of Suh, not the Church.

Plaintiffs also offered evidence of other allegedly improper actions by Lee and the Lee faction. Plaintiffs claim that:

- Lee attempted to "sow chaos" in the Church by disrupting services, yelling at other Church members, and challenging his excommunication.
- Lee, Suh and others met under a tree outside the Church on August 1, 2021 and declared that Suh would be the President and "Interim Moderator of Session." Lee created inaccurate minutes of this meeting.
- On August 9, 2021, Lee broke into the Church and stole the Church's books and records, a camcorder, a laptop, and a CCTV unit.
- Lee changed the locks on the Church and hired a private security guard to prevent Kim from entering.
- Lee submitted an inaccurate declaration to the Court in this lawsuit.

Defendants dispute much of the evidence offered by Plaintiffs. Defendants also contend that most of Plaintiffs' evidence is irrelevant, Suh's alleged actions at Bethlehem do not pertain to the Church, and the only pertinent testimony concerned a recent loan taken by the Church to repay another loan, and to pay for repairs on the Church building.

According to Plaintiffs' closing argument brief and Kim's testimony, Plaintiffs seek, in part:

- An injunction prohibiting Suh from coming to the Church;
- An order nullifying "all decisions by Suh;"

- An order removing Lee from any Church position;
- An order confirming Kim as interim Senior Pastor for one year.

**FAC First Cause of Action: Breach of Fiduciary Duty (Against Lee)**

Plaintiffs must prove (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages proximately caused by the breach. (*Slovensky v. Friedman* (2006) 142 Cal. App. 4th 1518, 1534.)

Plaintiffs argue that Lee owed a fiduciary duty to the Church up until his June 2021 excommunication. Plaintiffs then point to a series of actions taken by Lee after June 2021 that it claims did not protect the interests of the Church and were detrimental to the Church. Defendants argue (and Judge Chalfant found) that Lee remained a duly elected member of the Session after June 2021; they essentially concede an ongoing fiduciary duty. Because Lee remained a member of the Session the Court finds Lee had a fiduciary duty to the Church after June 2021.

The problems with Plaintiffs' case surface when we consider the various acts Plaintiffs claim constitute a breach of that duty. Many of those actions – including efforts to "sow chaos" and to declare who should be President, preparing minutes of the alleged meeting, changing the locks so Kim could not enter the Church – concern the efforts of the Lee faction to prevail over the Kim faction and control the Church. Plaintiffs have not established that Lee's actions violated his fiduciary duty to the Church. Indeed, Lee reasonably believed he was acting in the best interest of the Church, protecting it from the rival Kim faction. Lee's actions can only be seen as detrimental to the Church if we assume that the Kim faction properly controlled the Church and Lee acted to undermine the Kim faction's rightful control. The Court finds that Plaintiffs did not prove that, under the Church's bylaws, the Kim faction properly controlled the Church.[2] Lee's efforts to gain control of the Church are not breaches of his fiduciary duty to the Church.

To the extent Plaintiffs claim that Kim is the proper religious leader of the Church, finding a breach of fiduciary duty based on Lee's efforts to prevent Kim from acting in that role also would run afoul of the Court's constitutional obligation to refrain from ruling on religious matters. As Judge Chalfant recognized, the Court cannot determine who should be the religious leader of the Church, or who should be its clergy and members. (*See also Kim v. The True Church Members of Holy Hill Community Church* (2015) 236 Cal. App. 4th 1435, 1445 ["The prohibition against civil court participation in sectarian disputes extends to issues involving membership, clergy credentials and discipline, as well as religious entity governance and administration."]) As noted, a finding that Lee breached his fiduciary duty to the Church by opposing the Kim faction's leadership of the Church would require, or at least imply, a finding that the Kim faction was the proper leadership. This would embroil the Court in deciding who should govern the Church, who should be its clergy, and who should be its members. And even if the Court could

---

[2] Such a finding also would conflict with Judge Chalfant's rulings.

make such a finding consistent with the Constitution, the relief Plaintiffs seek –
prohibiting Suh from coming to the Church and nullifying all his decisions, removing Lee
from any Church position, and confirming Kim as the Senior Pastor – surely run afoul of
the constitutional limitation.[3]

Plaintiffs' allegations concerning theft of the Church's books and records and
electronic equipment do not fall within the constitutional prohibition. Theft would be a
breach of fiduciary duty and would not require the Court to delve into religious matters.
But Plaintiffs did not prove that Lee committed the theft.  Chung testified that someone
stole those items, and he assumed it was Lee, but Plaintiffs presented no witnesses
who saw Lee commit a theft or who had percipient knowledge of it. There was no
evidence Lee had the stolen items in his possession or had been convicted of the theft.
Plaintiffs did not satisfy their burden of proof on this issue.

Plaintiffs' evidence concerning the allegedly false declaration Lee submitted in
this action is inconclusive; Plaintiffs did not prove falsity by a preponderance of the
evidence. In addition, asking the Court to impose liability based on a statement made in
a judicial proceeding likely violates Civil Code § 47(b). (*Tom Jones Enterprises, Ltd. v.
County of Los Angeles* (2013) 212 Cal.App.4th 1283, 1293-4 ["The usual formulation is
that the privilege applies to any communication (1) made in judicial or quasi-judicial
proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the
objects of the litigation; and (4) that have some connection or logical relation to the
action. [Citations.]"].)

As to Plaintiffs' allegations concerning Suh's causing his various creditors to be
named as mortgagees, payees, or beneficiaries of the Church's insurance policy,
Plaintiffs concede in their closing argument brief that Lee has never been a signatory on
the Church's bank account and lacks knowledge of the Church's financial affairs. The
Receiver, not Lee, apparently permitted the Lee faction to operate the Church. Plaintiffs
have not proved that Suh was an agent of Lee, or that Lee was personally responsible
for supervising Suh or managing the private lenders listed as mortgagees or payees on
the Church's insurance policy. Plaintiffs have not proved that Lee breached his fiduciary
duty because of Suh's actions. The Court further addresses Suh's actions on this issue
below.

The Court finds for Defendants on the first cause of action.

**Second Cause of Action: Conversion (Against Lee)**

The second cause of action alleges that Lee entered the Church and removed
the Church's books and records, computers, camcorder, CCTV main unit, and other
items. As discussed above, Plaintiffs did not prove that Lee committed this conversion.

---

[3] In their closing argument brief Plaintiffs suggest the Court should rule on whether Lee properly was
excommunicated or reinstated. As Judge Chalfant recognized, ruling on who is properly a member of the
Church would violate the constitutional limitation on the Court's involvement in religious decisions.

The Court finds for Defendants on the second cause of action.

**Third Cause of Action: Declaratory Relief (Against All Defendants)**

The third cause of action seeks declaratory relief for the actions discussed in the first cause of action. The Court incorporates its analysis here. Plaintiffs have not shown that Lee is not properly a member of the Session, and the Court will not amend Judge Chalfant's ruling on this issue. Nor have Plaintiffs shown that the appointment of Suh as Senior Pastor is void, or that Kim's position of Interim Senior Pastor "remains in effect."

Plaintiffs' closing argument brief seeks two additional declarations. First, Plaintiffs seek a declaration that the Receiver's "post-election actions are interim procedures which are not binding court orders." Plaintiffs do not explain what actions they are referring to, or what the significance is of declaring them interim procedures. Nor do Plaintiffs point the Court to any evidence supporting this claim. Plaintiffs have not shown entitlement to this declaration.

Second, Plaintiffs ask the Court to declare the Church's insurance policy "invalid insofar as it identified individuals – Solomon Ko, Jung Sook Ko, Han Jiun Shin, and Hwa Chong Kang listed as [the Church's] payees, mortgagees or beneficiaries." At trial, Plaintiffs established that those individuals loaned money to Bethlehem Church and/or to Suh's son David Suh. In late 2022 or early 2023, each of these lenders was made a mortgagee, payee, and/or beneficiary of the Church's insurance policy with Brotherhood Mutual Insurance Company. Defendants largely ignore this testimony, focusing only on a $150,000 loan made to the Church by Jae Min Chung, secured by a deed of trust on the Church, and contending that Chung refused repayment of this loan. This does not justify the addition of the four individuals to the Church's insurance policy, nor did the evidence establish why it would be in the Church's interest for them to be added to the policy. Defendants have not shown they may properly use the Church's assets as collateral for outside businesses, including those of David Suh. In short, the evidence establishes no legitimate reason for these four individuals to be payees, mortgagees, or beneficiaries of the Church's insurance policy. The Court finds for Plaintiffs on this issue.

The Court finds for Plaintiffs on the third cause of action only with respect to the Brotherhood Mutual insurance policy. The additions of Solomon Ko, Jung Sook Ko, Han Jium Shin, and Hwa Chong Kang to that policy as loss payees, mortgagees, and/or beneficiaries are invalid.

**Fourth Cause of Action: Injunctive Relief (Against Suh and Lee)**

Most of the injunctive relief requested by Plaintiffs is addressed in connection with the other causes of action. The Court incorporates its analysis here.

As to financial transactions, Plaintiffs seek an injunction prohibiting Suh and Lee from "taking further detrimental financial actions, such as obtaining bank loans in the name of KFPC." This request is overbroad and vague; the Court declines to impose it.

Considering the Court's finding with respect to the Church's insurance policy, the Court will issue an injunction prohibiting the sale, mortgaging, or use of the Church's assets or insurance policies for the personal gain of Defendants, their families, or business associates, or to finance, collateralize, or secure loans for any non-Church business or activity.

Plaintiffs have not proved in this trial that Suh should be removed as an officer of the Church. His prior actions at Bethlehem and the unjustified addition of the four individuals to the Church's insurance policy are concerning, but Plaintiffs have not shown that Suh has taken actions at the Church that justify his removal as an officer at this time.

The Court finds for Plaintiffs on the fourth cause of action only as set forth above.

Plaintiffs have not shown entitlement to punitive damages.

**Cross Complaint: Breach of Fiduciary Duty (Against Kim and Chung)**

The Cross Complaint alleges the flip side of the same story. According to Defendants, Kim and Chung breached their fiduciary duty to the Church by vying for control of the Church. The Court applies the same analysis. Defendants have not proved a breach of fiduciary duty. The claim that Kim and Chung sought to affiliate the Church with the national presbytery falls squarely withing the constitutional prohibition against the Court interfering with religious matters.

Nor have Defendants proved that Chung violated a fiduciary duty in connection with his $150,000 loan to the Church. Chung apparently has declined to accept repayment until the conclusion of the lawsuit. The Court is troubled by the tit-for-tat behavior engaged in by the parties, which includes this action by Chung, but Defendants have not shown this constitutes a breach of fiduciary duty.

The Court finds for Plaintiffs/Cross Defendants on this cause of action in the Cross Complaint.

## CONCLUSION

For the reasons and to the extent discussed above, the Court finds in part for Plaintiffs on the third and fourth causes of action. The Court declares that Solomon Ko, Jung Sook Ko, Han Jiun Shin, and Hwa Chong Kang were not properly listed as payees, mortgagees, and/or beneficiaries of the Church's policy with Brotherhood Mutual Insurance Company. The Court orders that the policy be amended to remove them.

The Court enjoins Defendants from selling, mortgaging, or using any of the Church's assets or insurance policies for the personal gain of Defendants, their families, or their business associates. The Court further enjoins Defendants from using any of the Church's assets or insurance policies to finance, collateralize, or secure loans for any non-Church business or activity.

The Court otherwise finds for Defendants on the FAC, and for Plaintiffs on the breach of fiduciary duty cause of action in the Cross Complaint.

PLAINTIFFS SHALL FILE AND SERVE A PROPOSED JUDGMENT WITHIN 10 DAYS.

PLAINTIFFS SHALL RETRIEVE ALL EXHIBITS FROM THE COURT AND MAINTAIN THEM UNTIL THE TIME FOR APPEAL HAS EXPIRED OR, IF AN APPEAL IS FILED, UNTIL THE APPEAL HAS CONCLUDED.

Dated: August 7, 2023.

# EXHIBIT 2

# EXHIBIT 2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Stanley Mosk Courthouse, Department 74

**24STCV04366**                                                                October 2, 2024
**JAE MIN CHUNG, et al. vs JAE YEUN LEE, et al.**                                8:30 AM

Judge: Honorable Colin Leis              CSR: None
Judicial Assistant: L. Meguerian         ERM: None
Courtroom Assistant: C. Lam              Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Mary Lee in person

For Defendant(s): Anthony Diehl for Steven E. Ernest in person; Todd Andrew Fuson (via LACC)

**NATURE OF PROCEEDINGS:** Hearing on Motion for Preliminary Injunction

The matter is called for hearing.

The Court has read and considered the moving papers, opposition and evidence.

The Court gives its oral tentative ruling and hears argument from counsel.

After consideration of all documents filed and oral argument, the Court adopts the tentative as the order of the Court as follows:

The court denies the request for preliminary injunction because plaintiff does not offer sufficient evidence to overcome Kang's bona fide encumbrancer defense. Accordingly, plaintiff has not established a likelihood of prevailing sufficient to support a preliminary injunction.

The Motion for Preliminary Injunction filed by JAE MIN CHUNG on 08/02/2024 is Denied.

Notice is waived.

BANKRUPTCY EXHIBIT 2

# EXHIBIT 3

# EXHIBIT 3

Anthony P. Diehl, Esq. (SBN 342160)
Steven E. Ernest, Esq. (SBN 183967)
**GERACI LAW FIRM**
90 Discovery
Irvine, CA 92618
Tele.: (949) 379-2600
Fax:   (949) 379-2610
E-mail: s.ernest@geracillp.com

Attorneys for Defendant,
HWA CHONG KANG

**Electronically FILED by
Superior Court of California,
County of Los Angeles
10/16/2024 11:35 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Bolden, Deputy Clerk**

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| 3160 8th LLC, a California Limited Liability Company; Los Angeles Korean 1st Presbyterian Church Corporation, a California Nonprofit Corporation, John Suh, an individual, and David J. Suh, an individual | Case No.  24STCV26918 |
| Plaintiff, | **OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (TRO)** |
| v. | Date: 10/17/2024 |
| Hwa Chong Kang, an individual; Solomon Ko, an individual; Jung Sook Ko, an individual; Han Jiun Shin, an individual; Paul Baik, an individual; John Kim, an individual; Kathleen Herrera, doing business as Western Fidelity Trustees; and DOES 1 through 20, inclusive | Time: 8:30 AM |
| | Dept.: 82 |
| Defendants. | Complaint Filed: October 15, 2024 |
| | Trial Date: None Set |

I.     **Introduction**

Defendant Hwa Chong Kang respectfully opposes the Plaintiffs' motion for a Temporary Restraining Order (TRO) seeking to halt the trustee sale scheduled for October 17, 2024, regarding the properties commonly known as 213-215, 223 S. Hobart Blvd, Los Angeles, CA 90004.

The Plaintiffs fail to meet the stringent legal standards required for the extraordinary remedy of a TRO. Specifically, Plaintiffs have not demonstrated a likelihood of success on the merits nor have they shown that they will suffer immediate and irreparable harm absent the TRO.

BANKRUPTCY EXHIBIT 3

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

Furthermore, the balance of equities and public interest weigh against granting the requested relief. The foreclosure sale is a lawful exercise of the lender's contractual and statutory rights, and Plaintiffs' requests are based on speculative, self-inflicted harm.

I.    **Summary of Arguments**

• The Complaint Admits That Ms. Kang Provided a Payoff Amount

• Alleged Accounting Issues Are Insufficient Grounds for Injunctive Relief

• The Accounting Allegation Is Moot -It Only Applies if Tender Payment Is Insufficient

• No Material Prejudice Without Tender

• Prior Injunction Against Suh Makes New Securing Loans Impossible

• Plaintiffs' Bad-Faith Allegations Are Unsupported by Facts

• Fraud Claims Lack Specificity

• Two Weeks Ago, a Preliminary Injunction in a Related Case was Denied

• Loss of Commercial Property Is Not Irreparable Harm

• Dilatory Request for Relief Undermines Urgency - **Self-created Exigencies**

• Plaintiffs Have an Adequate Remedy at Law

II.    **Discussion of Law**

The legal standard for obtaining a TRO is well-established in California law and mirrors the standard for a preliminary injunction. Plaintiffs must demonstrate:

1) Likelihood of Success on the Merits; 2) Immediate and Irreparable Harm; 3) Balance of Equities. (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286; *Hunter v. City of Whittier* (1989) 209 Cal.App.3d 588, 595).

A.    **Plaintiffs Fail to Demonstrate a Likelihood of Success on the Merits**

The Plaintiff's claims, as set forth in the Complaint and the motion for the TRO, lack legal merit. The causes of action alleged by the Plaintiffs—**1) breach of contract, 2) fraud, breach of the implied covenant of good faith and fair dealing, 3) improper foreclosure under California**

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

**Civil Code § 2924, 4) declaratory relief, 5) accounting, and 6) unfair business practice**s—are all based on speculative and unsupported allegations.

**1.    Valid and Enforceable Loan Agreement**

Plaintiffs admit to entering into a loan agreement for $4,000,000 secured by the properties in question. Plaintiffs have not disputed the validity of the loan or the liens on the properties, which were authorized through the signatures of John Suh (see Compl. ¶19).

**2.    Failure to Substantiate Claims of Misconduct**

Plaintiffs allege that Defendants misrepresented the nature of the loan, added lenders without consent, and failed to provide an accurate accounting (Compl. ¶¶23-27). However, Plaintiffs provide no concrete evidence to support these allegations. Courts have consistently rejected claims of improper foreclosure or irregularities in the foreclosure process absent specific factual support (*Ram v. OneWest Bank* (2015) 234 Cal.App.4th 1, 17).

**a.    The Complaint Admits That Ms. Kang Provided a Payoff Amount**

In their own Complaint, Plaintiffs acknowledge that on February 14, 2024, Defendants, specifically Ms. Kang, provided a payoff figure in response to Plaintiffs' request for an accounting (Compl. ¶27). This acknowledgment is critical because it undermines Plaintiffs' argument that Defendants have failed to comply with statutory obligations, particularly under California Civil Code § 2924.

**b.    Alleged Accounting Issues Are Insufficient Grounds for Injunctive Relief**

Plaintiffs' dissatisfaction and "confusion" with the payoff provided does not invalidate the loan agreement or justify enjoining the foreclosure. Even if there are minor discrepancies in the loan balance, this does not rise to the level of **material prejudice** sufficient to invalidate the foreclosure proceedings. The law is clear that **"technical defects"** in the notice of default must cause substantial prejudice to the trustor to justify relief (*Debrunner v. Deutsche Bank Nat'l Trust* Co. (2012) 204 Cal.App.4th 433, 440).

Plaintiffs have failed to provide any **factual evidence** demonstrating that the payoff amount was inaccurate or materially misleading. **What does the plaintiff assert is the correct loan balance?**

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

**c.      The Accounting Allegation Is Moot Because It Only Applies if the Trustee Asserts Tender Payment Is Insufficient to Redeem**

Plaintiffs' claim regarding Defendants' alleged failure to provide an accurate payoff is legally **moot**. An accounting dispute only becomes relevant if the borrower makes a **tender payment** that the trustee deems insufficient to redeem the property, and the foreclosure is complete.

"As a general rule, a debtor cannot set aside the foreclosure based on irregularities in the sale without also alleging tender of the amount of the secured debt. (*Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 512 [149 Cal. Rptr. 3d 749]; The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower]." (*FPCI RE-HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1022 [255 Cal. Rptr. 157].)

**d.      No Material Prejudice Without Tender**

California courts have consistently held that accounting disputes do not justify setting aside a foreclosure unless there is evidence that the borrower was prejudiced by being denied the opportunity to cure the default.

Any discrepancies or errors in the notice of default or accounting must cause **prejudice** to the borrower, such as by impairing the borrower's ability to tender the amount necessary to redeem the property. (*Ram v. OneWest Bank* (2015) 234 Cal.App.4th 1, 17) In this case, Plaintiffs have made no tender, so no such prejudice can be alleged.

Without a valid tender, Plaintiffs cannot show any material prejudice arising from the alleged inaccuracies in the accounting. Mere technical errors in the accounting or notice of default do not warrant setting aside a foreclosure unless the borrower can show how those errors impaired their ability to cure the default. (Pantoja v. Countrywide Home Loans, Inc. (N.D. Cal. 2009) 640 F.Supp.2d 1177, 1186) In this case, Plaintiffs have not shown how any alleged accounting errors prejudiced their ability to make a tender offer or redeem the properties.

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

**e.     Plaintiffs' Bad-Faith Allegations Are Unsupported by Facts**

Plaintiffs further allege that Ms. Kang acted in bad faith by failing to provide an accurate accounting or intentionally misstating the payoff amount. However, these allegations are conclusory and lack factual support. Plaintiffs admit they received a payoff figure but have failed to present any concrete evidence showing that the figures were intentionally misleading or inaccurate or with the intent to induce Plaintiff.

**f.     Prior Injunction Against Suh Makes New Securing Loans Impossible**

A prior **final judgment** entered in the related case, **21STCV31304**, **enjoins John Suh**, the Plaintiff in this case, from using any of the church's assets **to finance or collateralize loans** for non-church purposes. (Exhibit "1" page 7 of 8) This judgment is critical to the current motion as the Plaintiff now asserts the availability of a refinancing loan to pay off the current loan from First American Capital for **$5.8 million**, including **an $800,000 portion of the loan tied to John Suh's son's hotel** property (Compl. ¶26). The refinancing that Suh asserts is legally barred by the injunction.

The court cannot allow a party to rely on remedies that are themselves unlawful or in violation of existing court orders. Suh's reliance on this refinancing as a solution to cure the default and avoid foreclosure is impossible.

**g.     A Letter of Intent Is Insufficient and Does Not Justify Extraordinary Relief**

In their motion, Plaintiffs assert that they have secured a Letter of Intent (LOI) from First American Capital for a refinancing loan of $5.8 million. However, an LOI, a **non-binding** document, is not sufficient evidence of probable financing, and reliance on such a preliminary document is legally and practically flawed. California courts have consistently rejected the argument that a Letter of Intent constitutes sufficient evidence of probable financing or firm commitment to lend. (*Munoz v. Patel*, 81 Cal. App. 5th 761)

**3.     Fraud Claims Lack Specificity**

Plaintiffs' claims for breach of contract and fraud fail for lack of specificity. Under California law, fraud claims must be pleaded with particularity, specifying the "who, what, when,

where, and how" of the alleged misrepresentations. Plaintiffs have not met this requirement (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645).

**4.** **Two Weeks Ago, A Preliminary Injunction in a Related Case was Denied**

The Plaintiff, John Suh, and other entities associated with the Church, are involved as defendants in a related case, **24STCV04366**, where a motion for a preliminary injunction was denied. (Exhibit "2") The Plaintiff's prior **failure to seek injunctive relief** in that case precludes them from now asserting likelihood of success on the merits in this current proceeding.

**a.** In the prior case, the Plaintiff is a defendant in a derivative action filed by members of the church. The claims involve similar factual issues surrounding the encumbrance of church property. The Plaintiffs in that case sought a preliminary injunction to halt the foreclosure proceedings on the same church property that are at issue in the present case.

**b.** On October 2, 2024, **just two weeks ago**, The Honorable Judge Collin P. Leis denied the motion for a preliminary injunction on the grounds that that plaintiff failed to demonstrate a likelihood of success on the merits negating that **Ms. Kang is a bona fide encumbrancer.**

**c.** Under the doctrines of collateral estoppel and issue preclusion applies here. The denial of the preliminary injunction in 24STCV04366 establishes that there was no entitlement to injunctive relief, and it was likely Ms. Kang's bona fide encumbrance status would prevail. (Exhibit "2")

**d.** The Plaintiffs are attempting to use a new forum to relitigate claims that have already been resolved.

**B.** **Plaintiffs Have Not Shown Immediate and Irreparable Harm**

**1.** **Loss of Commercial Property Is Not Irreparable Harm**

Plaintiffs argue that the loss of the properties would constitute irreparable harm because of the unique nature of the properties. However, California courts have repeatedly held that monetary damages are sufficient to compensate for the loss of commercial property in foreclosure actions.

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

1    Loss of property is not considered irreparable harm if it can be compensated through monetary

2    damages (*Jessen v. Keystone Sav. & Loan Assn.* (1983) 142 Cal.App.3d 454, 457).

3    **2.    Dilatory Request for Relief Undermines Urgency**

4    Plaintiffs **waited until the eve of the foreclosure** sale to file this motion despite having

5    been aware of the scheduled sale for months. Such delay undermines any claim of immediate harm

6    and demonstrates that the alleged harm is self-inflicted. Courts in California routinely deny TROs

7    when plaintiffs delay in seeking relief (*Elmoqaddem v. Newresz LLC* (2022) Cal. Super. LEXIS

8    55342; Salazar v. JPMorgan Chase Bank (2023) Cal. Super. LEXIS 24509).  This delay suggests

9    a lack of immediate and irreparable harm. (*Oakland Tribune, Inc. v. Chronicle Publishing* Co.

10    (1985) 762 F.2d 1374, 1377.)

11    **a.**    Plaintiff was a party to a similar motion for preliminary injunction in a related case

12    with an opportunity to raise the issues raised in the immediate motion. This undermines any claim

13    of urgency or irreparable harm. Plaintiffs had the opportunity to **join the motion for a preliminary**

14    **injunction** in **24STCV04366** but elected to forego entering the fray. Instead, they waited until the

15    day before the scheduled foreclosure sale to file this ex parte motion for a TRO, a tactic that is

16    recognized as an abuse of the legal process. Courts have consistently held that **self-created**

17    **exigencies**, where a party deliberately delays action, do not warrant injunctive relief (*Elmoqaddem*

18    *v. Newresz LLC*, 2022 Cal. Super. LEXIS 55342; Salazar v. JPMorgan Chase Bank, 2023 Cal.

19    Super. LEXIS 24509).

20    **b.**    Parties who delay in seeking relief until the last moment cannot claim that they are

21    facing an emergency situation that warrants a TRO.  (*Javidzad v. Strategic Acquisitions* (2021 Cal.

22    Super. LEXIS 127737) In the present case, Plaintiffs were aware of the foreclosure sale date for

23    months but only filed their complaint and a TRO motion on **October 15, 2024**, **just two days**

24    **before** the scheduled sale.

25

26    **3**.    **Plaintiffs Have an Adequate Remedy at Law**

27    Monetary damages are an adequate remedy for any alleged harm suffered by Plaintiffs.

28    The properties in question are commercial assets with quantifiable values, and any harm can be

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2600

compensated through monetary damages. Courts generally deny injunctive relief when monetary damages are sufficient to make the plaintiff whole (*Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.* (1967) 255 Cal.App.2d 300, 307).

**III.    Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for a Temporary Restraining Order. Plaintiffs have failed to demonstrate a likelihood of success on the merits, have not shown immediate or irreparable harm, and the balance of equities weighs strongly in favor of Defendants.

Date: October 16, 2024          **GERACI LAW FIRM**

By: _____
*Anthony Diehl*

Anthony Diehl, Esq.
Attorney for Hwa Chong Kang

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

(Exhibit "1")
A prior final judgment entered in the related case, 21STCV31304 enjoins
John Suh, the Plaintiff in this case, from using any of the church's assets to finance or
collateralize loans for non-church purposes.

**FILED**
Superior Court of California
County of Los Angeles

AUG 07 2023

David W. Slayton, Executive Officer/Clerk of Court
By: M. Ventura, Deputy

**Superior Court of California**

**County of Los Angeles**

| | |
|---|---|
| Los Angeles Korean 1st Presbyterian Church Corporation, et al., | Case No.: **21STCV31304** |
| Plaintiffs, | |
| v. | Final Statement of Decision |
| Jae Yeun Lee, et al., | |
| Defendants. | |

Plaintiff Howard Sungi Kim and Los Angeles Korean 1st Presbyterian Church Corporation ("Church") filed the operative First Amended Complaint on July 25, 2022 against Defendants Jae Yeun Lee, Dae Kun Lee, He Keuk Lee, Sun Hwan Kim, and John S. Suh. The FAC contains causes of action for breach of fiduciary duty, conversion, declaratory relief, preliminary and permanent injunction, and battery. By stipulation on January 4, 2023, Plaintiffs clarified that Kim sues derivatively on behalf of the Church.

The case is consolidated with Case No. 21STCV32559, filed on September 1, 2021, in which Jae Yeun Lee and other individuals, also purporting to act on behalf of the Church, sued Howard Kim and others for declaratory and injunctive relief, breach of fiduciary duty, and accounting.[1]

The case proceeded to a bench trial on June 5, 2023 on the first four causes of action in the FAC, and on the cause of action in the Cross Complaint for breach of fiduciary duty against Howard Kim and Jae Min Chung. (Plaintiffs dismissed from the FAC He Keuk Lee and Sun Hwan Kim as Defendants and the cause of action for battery. Cross Complainants dismissed Seok Hee Ha, Seung Jin Lee, and Seung Hye Kim as Cross Defendants and the cause of action for accounting, and advised the Court that their causes of action for declaratory and injunctive relief had been decided in earlier proceedings.) At the close of evidence on June 7, 2023, the Court ordered the

---

[1] The parties routinely have referred to the -32559 case as the "Cross Complaint." For clarity, the Court adopts that designation here.

parties to provide simultaneous closing argument briefs. The parties did so on July 5, 2023, after which the Court took the matter under submission.

Defendants timely requested a statement of decision. The Court issued its proposed statement of decision on July 14, 2023; it set forth the Court's determination as to the ultimate facts and material issues in dispute. *Antelope Valley Groundwater Cases* (2020) 59 Cal. App. 5th 241, 265-66. Neither side submitted objections under CRC 3.1590(g). The Court now issues its final statement of decision.

The Court finds the facts below by a preponderance of the evidence. The Court considered which party had the burden of proof on the various claims, defenses, and cross claims. The Court evaluated Plaintiff's request for punitive damages under the clear and convincing evidence standard in Civil Code § 3294(a).

## PRIOR PROCEEDINGS BEFORE JUDGE CHALFANT

The FAC and Cross Complaint concern two factions vying for control of the Church: the Plaintiff group (the "Kim faction"), and the Defendant/Cross Complainant group (the "Lee faction").

In December 2021, Judge James Chalfant in Department 85 was presented with a motion to invalidate the election of Howard Kim as Senior Pastor. The Court recognized the constitutional limitations on the Court's review of matters that concern religious doctrine. For example, as Judge Chalfant noted, the Court cannot constitutionally decide who should be the religious leader of the Church, or who should be its clergy and members. (*See, e.g., Serbian Eastern Orthodox Diocese v Millivojevich* (1976) 426 U.S. 696, 724-725.) The Court may, however, apply neutral principles of law to determine, for instance, whether the Church complied with its governing bylaws. The Court ruled that Howard Kim, leader of the Kim faction, had not been properly installed as Senior Pastor of the Church and the Kim faction's removal of the Lee faction was improper and void. Although the Court did not directly rule on Jae Yeun Lee's excommunication, it noted that the excommunication violated the bylaws.

The Court ordered new elections for the Church's Board (known as the Session). The Court subsequently appointed a Receiver to oversee the election and take temporary control of the Church's finances. The election was held on August 21, 2022; no candidate for the Session received the necessary two-thirds vote.

The Court previously had ruled that Lee, namesake of the Lee faction, did not need to run in the August 2022 election because he already had been elected, his term had not expired, and he was properly a member of the Session. On September 8, 2022, the Court ruled that one active member (Lee) was sufficient to constitute a Session under the Church's bylaws; the Court terminated the Receiver's appointment.

## EVIDENCE AND ANALYSIS

At trial, Plaintiffs' witnesses recounted their version of how Kim became Senior Pastor, subject to congregational approval, but Lee refused to allow the congregation to vote. Plaintiffs' witnesses also testified that the Kim faction voted to excommunicate Lee, leaving Kim and Elder Shin as members of the Session. When Shin resigned from the Session, according to Plaintiffs, Kim became, in Plaintiffs' view, the sole member of the Session.

After his purported excommunication, Lee began to attend services at Bethlehem Church, where Suh was Senior Pastor. Plaintiffs contend that Lee brought Suh into the Church for improper purposes. Plaintiffs argue that Suh planned to use the Church's real property as security for his personal loan debts. Plaintiffs presented evidence of Suh's alleged use of Bethlehem Church's assets for his personal use, including loans made for the benefit of Suh's son's business. According to Plaintiffs, Suh then caused his various creditors to be named as mortgagees, payees, or beneficiaries of the Church's insurance policy. Plaintiffs argue that "the only inference that can be drawn" is that Suh intended to use the Church's insurance policy as a guarantee in lieu of a deed of trust secured by the Church's real property, to obtain loans. Plaintiffs say that all of Lee's actions were for the benefit of Suh, not the Church.

Plaintiffs also offered evidence of other allegedly improper actions by Lee and the Lee faction. Plaintiffs claim that:

- Lee attempted to "sow chaos" in the Church by disrupting services, yelling at other Church members, and challenging his excommunication.
- Lee, Suh and others met under a tree outside the Church on August 1, 2021 and declared that Suh would be the President and "Interim Moderator of Session." Lee created inaccurate minutes of this meeting.
- On August 9, 2021, Lee broke into the Church and stole the Church's books and records, a camcorder, a laptop, and a CCTV unit.
- Lee changed the locks on the Church and hired a private security guard to prevent Kim from entering.
- Lee submitted an inaccurate declaration to the Court in this lawsuit.

Defendants dispute much of the evidence offered by Plaintiffs. Defendants also contend that most of Plaintiffs' evidence is irrelevant, Suh's alleged actions at Bethlehem do not pertain to the Church, and the only pertinent testimony concerned a recent loan taken by the Church to repay another loan, and to pay for repairs on the Church building.

According to Plaintiffs' closing argument brief and Kim's testimony, Plaintiffs seek, in part:

- An injunction prohibiting Suh from coming to the Church;
- An order nullifying "all decisions by Suh;"

- An order removing Lee from any Church position;
- An order confirming Kim as interim Senior Pastor for one year.

### FAC First Cause of Action: Breach of Fiduciary Duty (Against Lee)

Plaintiffs must prove (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damages proximately caused by the breach. (*Slovensky v. Friedman* (2006) 142 Cal. App. 4th 1518, 1534.)

Plaintiffs argue that Lee owed a fiduciary duty to the Church up until his June 2021 excommunication. Plaintiffs then point to a series of actions taken by Lee after June 2021 that it claims did not protect the interests of the Church and were detrimental to the Church. Defendants argue (and Judge Chalfant found) that Lee remained a duly elected member of the Session after June 2021; they essentially concede an ongoing fiduciary duty. Because Lee remained a member of the Session the Court finds Lee had a fiduciary duty to the Church after June 2021.

The problems with Plaintiffs' case surface when we consider the various acts Plaintiffs claim constitute a breach of that duty. Many of those actions – including efforts to "sow chaos" and to declare who should be President, preparing minutes of the alleged meeting, changing the locks so Kim could not enter the Church – concern the efforts of the Lee faction to prevail over the Kim faction and control the Church. Plaintiffs have not established that Lee's actions violated his fiduciary duty to the Church. Indeed, Lee reasonably believed he was acting in the best interest of the Church, protecting it from the rival Kim faction. Lee's actions can only be seen as detrimental to the Church if we assume that the Kim faction properly controlled the Church and Lee acted to undermine the Kim faction's rightful control. The Court finds that Plaintiffs did not prove that, under the Church's bylaws, the Kim faction properly controlled the Church.[2] Lee's efforts to gain control of the Church are not breaches of his fiduciary duty to the Church.

To the extent Plaintiffs claim that Kim is the proper religious leader of the Church, finding a breach of fiduciary duty based on Lee's efforts to prevent Kim from acting in that role also would run afoul of the Court's constitutional obligation to refrain from ruling on religious matters. As Judge Chalfant recognized, the Court cannot determine who should be the religious leader of the Church, or who should be its clergy and members. (*See also Kim v. The True Church Members of Holy Hill Community Church* (2015) 236 Cal. App. 4th 1435, 1445 ["The prohibition against civil court participation in sectarian disputes extends to issues involving membership, clergy credentials and discipline, as well as religious entity governance and administration."]) As noted, a finding that Lee breached his fiduciary duty to the Church by opposing the Kim faction's leadership of the Church would require, or at least imply, a finding that the Kim faction was the proper leadership. This would embroil the Court in deciding who should govern the Church, who should be its clergy, and who should be its members. And even if the Court could

---

[2] Such a finding also would conflict with Judge Chalfant's rulings.

make such a finding consistent with the Constitution, the relief Plaintiffs seek – prohibiting Suh from coming to the Church and nullifying all his decisions, removing Lee from any Church position, and confirming Kim as the Senior Pastor – surely run afoul of the constitutional limitation.[3]

Plaintiffs' allegations concerning theft of the Church's books and records and electronic equipment do not fall within the constitutional prohibition. Theft would be a breach of fiduciary duty and would not require the Court to delve into religious matters. But Plaintiffs did not prove that Lee committed the theft. Chung testified that someone stole those items, and he assumed it was Lee, but Plaintiffs presented no witnesses who saw Lee commit a theft or who had percipient knowledge of it. There was no evidence Lee had the stolen items in his possession or had been convicted of the theft. Plaintiffs did not satisfy their burden of proof on this issue.

Plaintiffs' evidence concerning the allegedly false declaration Lee submitted in this action is inconclusive; Plaintiffs did not prove falsity by a preponderance of the evidence. In addition, asking the Court to impose liability based on a statement made in a judicial proceeding likely violates Civil Code § 47(b). (*Tom Jones Enterprises, Ltd. v. County of Los Angeles* (2013) 212 Cal.App.4th 1283, 1293-4 ["The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]"].)

As to Plaintiffs' allegations concerning Suh's causing his various creditors to be named as mortgagees, payees, or beneficiaries of the Church's insurance policy, Plaintiffs concede in their closing argument brief that Lee has never been a signatory on the Church's bank account and lacks knowledge of the Church's financial affairs. The Receiver, not Lee, apparently permitted the Lee faction to operate the Church. Plaintiffs have not proved that Suh was an agent of Lee, or that Lee was personally responsible for supervising Suh or managing the private lenders listed as mortgagees or payees on the Church's insurance policy. Plaintiffs have not proved that Lee breached his fiduciary duty because of Suh's actions. The Court further addresses Suh's actions on this issue below.

The Court finds for Defendants on the first cause of action.

### Second Cause of Action: Conversion (Against Lee)

The second cause of action alleges that Lee entered the Church and removed the Church's books and records, computers, camcorder, CCTV main unit, and other items. As discussed above, Plaintiffs did not prove that Lee committed this conversion.

---

[3] In their closing argument brief Plaintiffs suggest the Court should rule on whether Lee properly was excommunicated or reinstated. As Judge Chalfant recognized, ruling on who is properly a member of the Church would violate the constitutional limitation on the Court's involvement in religious decisions.

The Court finds for Defendants on the second cause of action.

**Third Cause of Action: Declaratory Relief (Against All Defendants)**

The third cause of action seeks declaratory relief for the actions discussed in the first cause of action. The Court incorporates its analysis here. Plaintiffs have not shown that Lee is not properly a member of the Session, and the Court will not amend Judge Chalfant's ruling on this issue. Nor have Plaintiffs shown that the appointment of Suh as Senior Pastor is void, or that Kim's position of Interim Senior Pastor "remains in effect."

Plaintiffs' closing argument brief seeks two additional declarations. First, Plaintiffs seek a declaration that the Receiver's "post-election actions are interim procedures which are not binding court orders." Plaintiffs do not explain what actions they are referring to, or what the significance is of declaring them interim procedures. Nor do Plaintiffs point the Court to any evidence supporting this claim. Plaintiffs have not shown entitlement to this declaration.

Second, Plaintiffs ask the Court to declare the Church's insurance policy "invalid insofar as it identified individuals – Solomon Ko, Jung Sook Ko, Han Jiun Shin, and Hwa Chong Kang listed as [the Church's] payees, mortgagees or beneficiaries." At trial, Plaintiffs established that those individuals loaned money to Bethlehem Church and/or to Suh's son David Suh. In late 2022 or early 2023, each of these lenders was made a mortgagee, payee, and/or beneficiary of the Church's insurance policy with Brotherhood Mutual Insurance Company. Defendants largely ignore this testimony, focusing only on a $150,000 loan made to the Church by Jae Min Chung, secured by a deed of trust on the Church, and contending that Chung refused repayment of this loan. This does not justify the addition of the four individuals to the Church's insurance policy, nor did the evidence establish why it would be in the Church's interest for them to be added to the policy. Defendants have not shown they may properly use the Church's assets as collateral for outside businesses, including those of David Suh. In short, the evidence establishes no legitimate reason for these four individuals to be payees, mortgagees, or beneficiaries of the Church's insurance policy. The Court finds for Plaintiffs on this issue.

The Court finds for Plaintiffs on the third cause of action only with respect to the Brotherhood Mutual insurance policy. The additions of Solomon Ko, Jung Sook Ko, Han Jium Shin, and Hwa Chong Kang to that policy as loss payees, mortgagees, and/or beneficiaries are invalid.

**Fourth Cause of Action: Injunctive Relief (Against Suh and Lee)**

Most of the injunctive relief requested by Plaintiffs is addressed in connection with the other causes of action. The Court incorporates its analysis here.

As to financial transactions, Plaintiffs seek an injunction prohibiting Suh and Lee from "taking further detrimental financial actions, such as obtaining bank loans in the name of KFPC." This request is overbroad and vague; the Court declines to impose it.

Considering the Court's finding with respect to the Church's insurance policy, the Court will issue an injunction prohibiting the sale, mortgaging, or use of the Church's assets or insurance policies for the personal gain of Defendants, their families, or business associates, or to finance, collateralize, or secure loans for any non-Church business or activity.

Plaintiffs have not proved in this trial that Suh should be removed as an officer of the Church. His prior actions at Bethlehem and the unjustified addition of the four individuals to the Church's insurance policy are concerning, but Plaintiffs have not shown that Suh has taken actions at the Church that justify his removal as an officer at this time.

The Court finds for Plaintiffs on the fourth cause of action only as set forth above.

Plaintiffs have not shown entitlement to punitive damages.

**Cross Complaint: Breach of Fiduciary Duty (Against Kim and Chung)**

The Cross Complaint alleges the flip side of the same story. According to Defendants, Kim and Chung breached their fiduciary duty to the Church by vying for control of the Church. The Court applies the same analysis. Defendants have not proved a breach of fiduciary duty. The claim that Kim and Chung sought to affiliate the Church with the national presbytery falls squarely withing the constitutional prohibition against the Court interfering with religious matters.

Nor have Defendants proved that Chung violated a fiduciary duty in connection with his $150,000 loan to the Church. Chung apparently has declined to accept repayment until the conclusion of the lawsuit. The Court is troubled by the tit-for-tat behavior engaged in by the parties, which includes this action by Chung, but Defendants have not shown this constitutes a breach of fiduciary duty.

The Court finds for Plaintiffs/Cross Defendants on this cause of action in the Cross Complaint.

## CONCLUSION

For the reasons and to the extent discussed above, the Court finds in part for Plaintiffs on the third and fourth causes of action. The Court declares that Solomon Ko, Jung Sook Ko, Han Jiun Shin, and Hwa Chong Kang were not properly listed as payees, mortgagees, and/or beneficiaries of the Church's policy with Brotherhood Mutual Insurance Company. The Court orders that the policy be amended to remove them.

The Court enjoins Defendants from selling, mortgaging, or using any of the Church's assets or insurance policies for the personal gain of Defendants, their families, or their business associates. The Court further enjoins Defendants from using any of the Church's assets or insurance policies to finance, collateralize, or secure loans for any non-Church business or activity.

The Court otherwise finds for Defendants on the FAC, and for Plaintiffs on the breach of fiduciary duty cause of action in the Cross Complaint.

PLAINTIFFS SHALL FILE AND SERVE A PROPOSED JUDGMENT WITHIN 10 DAYS.

PLAINTIFFS SHALL RETRIEVE ALL EXHIBITS FROM THE COURT AND MAINTAIN THEM UNTIL THE TIME FOR APPEAL HAS EXPIRED OR, IF AN APPEAL IS FILED, UNTIL THE APPEAL HAS CONCLUDED.

Dated: August 7, 2023.

Exhibit "2"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 74

**24STCV04366**                                                    October 2, 2024
**JAE MIN CHUNG, et al. vs JAE YEUN LEE, et al.**                  8:30 AM

Judge: Honorable Colin Leis                CSR: None
Judicial Assistant: L. Meguerian           ERM: None
Courtroom Assistant: C. Lam                Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Mary Lee in person

For Defendant(s): Anthony Diehl for Steven E. Ernest in person; Todd Andrew Fuson (via LACC)

**NATURE OF PROCEEDINGS:** Hearing on Motion for Preliminary Injunction

The matter is called for hearing.

The Court has read and considered the moving papers, opposition and evidence.

The Court gives its oral tentative ruling and hears argument from counsel.

After consideration of all documents filed and oral argument, the Court adopts the tentative as the order of the Court as follows:

The court denies the request for preliminary injunction because plaintiff does not offer sufficient evidence to overcome Kang's bona fide encumbrancer defense. Accordingly, plaintiff has not established a likelihood of prevailing sufficient to support a preliminary injunction.

The Motion for Preliminary Injunction filed by JAE MIN CHUNG on 08/02/2024 is Denied.

Notice is waived.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

**24STCV26918**                                                                 October 17, 2024
**JOHN SUH vs HWA CHONG KANG, et al.**                                           8:30 AM

| | |
|---|---|
| Judge: Honorable Stephen I. Goorvitch | CSR: None |
| Judicial Assistant: R. Mendoza | ERM: None |
| Courtroom Assistant: None | Deputy Sheriff: None |

APPEARANCES:

For Plaintiff(s): Matthew Sean Harrison (Telephonic)

For Defendant(s): Anthony Diehl for Hwa Chong Kang

**NATURE OF PROCEEDINGS:** Hearing on Ex Parte Application for Temporary Restraining Order

The matter is not called for hearing.

The court in chambers reviews the ex parte application and Opposition to Plaintiff's Motion for Temporary Restraining Order.

The Court rules as follows:

Plaintiff John Suh filed a complaint against various defendants alleging that Defendant Hwa Chong Kang executed a promissory note with the Los Angeles Korean 1st Presbyterian Church Congregation (the "church") in the amount of $4 million and received $3.2 million. Plaintiff alleges breach of contract and other causes of action concerning this loan. Now, Plaintiff seeks a temporary restraining order on an ex parte basis to stop a trustee sale scheduled for today (October 17, 2024).

The court elects to decide this ex parte application without holding a hearing, per Code of Civil Procedure section 166(a)(1). The ex parte application is denied for several reasons.

First, Plaintiff does not have standing to raise claims on behalf of the church. The complaint was filed by John Suh as a self-represented party, though he has since retained counsel. The church was the party to the promissory note: "On or about December 16, 2022, promissory note of $4,000,000.00 was executed between the lender and Defendant, Hwa Chong Kang ('Kang'), and borrower and Plaintiff, LA Korean Presbyterian Church with loan maturity date of January 1, 2024, Exhibit 3." (Complaint ¶ 19.) This is confirmed by the promissory note, which is attached to the complaint. (See Complaint Exh. 3.) However, the church is not a party to this action.

Second, the ex parte application for a TRO is defective. It cites no evidence, relying exclusively

# EXHIBIT 4

# EXHIBIT 4

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Stanley Mosk Courthouse, Department 82

**24STCV26918**                                                          October 17, 2024
**JOHN SUH vs HWA CHONG KANG, et al.**                                    8:30 AM

Judge: Honorable Stephen I. Goorvitch          CSR: None
Judicial Assistant: R. Mendoza                 ERM: None
Courtroom Assistant: None                      Deputy Sheriff: None

on the complaint. However, the complaint is not verified so it is not admissible evidence.
Similarly, the exhibits attached to the complaint are not authenticated. Because the ex parte
application cites no admissible evidence, Plaintiff's counsel does not demonstrate any likelihood
of success on the merits.

Third, the ex parte application does not establish good cause for this exigency. Although
Plaintiff's counsel represents that the trustee sale is today, he does not explain why Plaintiff did
not seek relief sooner. Therefore, any exigency appears to stem from Plaintiff's negligence.

Based upon the foregoing, the court denies Plaintiff's ex parte application for a temporary
restraining order. The court need not address Defendant Hwa Chong Kang's remaining
arguments. Plaintiff's counsel shall provide notice.

The Ex Parte Application Ex Parte Request for Temporary Restraining Order filed by John Suh
on 10/16/2024 is Denied.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

20 Pacifica, Suite 300
Irvine, CA 92618

A true and correct copy of the foregoing document entitled (*specify*): SECURED CREDITOR HWA CHONG KANG'S
SUPPORT FOR U.S. TRUSTEE'S MOTION TO DISMISS THIS CASE, AND RESPONSE TO DEBTOR'S
OPPOSITION TO U.S. TRUSTEE'S MOTION TO DISMISS CASE;

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
11/26/2024        , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

PLEASE SEE ATTACHED MAILING LIST

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)   11/26/2024        , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

PLEASE SEE ATTACHED MAILING LIST

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)                , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/26/2024 | CORAH ZACARIAS | /S/ Corah Zacarias |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# Mailing Information for Case 2:24-bk-18457-BB

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Ryan J DeRose**   ryan@parkandlim.com, cathy@parkandlim.com
- **Marina Fineman**   m.fineman@geracillp.com
- **Matthew Harrison**   matt@procivlaw.com
- **David Samuel Shevitz**   David.S.Shevitz@usdoj.gov
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

## Creditor List

Click the link above to produce a complete list of **creditors** only.

## List of Creditors

Click on the link above to produce a list of **all** creditors and **all** parties in the case. User may sort in columns or raw data format.

LIST OF CREDITORS

Label Matrix for local noticing
0973-2
Case 2:24-bk-18457-BB
Central District of California
Los Angeles
Tue Nov 26 16:31:35 PST 2024

Los Angeles Korean 1st Presbyterian Church C
213 S. Hobart Blvd
Los Angeles, CA 90004-5299

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

Art Box
928 S Western Ave #150
Los Angeles, CA 90006-1078

BMP Inc
7622 Katella Ave #221
Stanton, CA 90680-3166

Coalition SEO
445 S Figueroa St #3100
Los Angeles, CA 90071-1635

Han Jiun Shin
1074 S Orange Grove Blvd
Pasadena, CA 91105-3507

Hwa Chong Kang
7416 E. Grovewood Lane
Orange, CA 92869-1031

INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

Kleen Kraft Services
5801 Sheila St
Commerce, CA 90040-2321

Shinhan Bank
3000 W Olympic Blvd
Los Angeles, CA 90006-2516

Solomon Ko and Jung Sook Ko
9701 Stamps Avenue
Downey, CA 90240-3327

TGI BBQ
2585 W Olympic Blvd
Los Angeles, CA 90006-2986

TJ Enterprise Inc
633 West Fifth Street 26
Los Angeles, CA 90071-2053

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Matthew Harrison
Prometheus Civic Law
120 Vantis Dr Ste 300
Suite 300
Aliso Viejo, CA 92656-2677

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)Hwa Chong Kang

End of Label Matrix
Mailable recipients    15
Bypassed recipients     2
Total                  17